## JORGE VELEZ *v.* COMMISSIONER OF CORRECTION (SC 16095)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued May 25—officially released August 31, 1999

*Todd A. Edgington*, assistant public defender, for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Lynn D. Wittenbrink* and *Gregory D'Auria*, assistant attorneys general, for the appellee (respondent).

*Opinion*

CALLAHAN, C. J. The dispositive issue in this appeal is whether General Statutes § 18-100d[1] renders General Statutes §§ 18-7, 18-7a (c), 18-98a, 18-98b and 18-98d (b)[2] (good time statutes) inapplicable to persons sen-

[1] General Statutes § 18-100d provides: "Notwithstanding any other provision of the general statutes, any person convicted of a crime committed on or after October 1, 1994, shall be subject to supervision by personnel of the Department of Correction or the Board of Parole until the expiration of the maximum term or terms for which he was sentenced."

[2] General Statutes § 18-7 provides in relevant part: "Any prisoner sentenced to a term of imprisonment prior to October 1, 1976, may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence, as follows: Sixty days for each year, and pro rata for a part of a year, of a sentence which is not for more than five years; and ninety days for the sixth and each subsequent year, and pro rata for a part of a year, and, in addition thereto, five days for each month as a meritorious time service award which may be granted in the discretion of the warden and the commissioner for exemplary conduct and meritorious achievement; provided any serious act of misconduct or insubordination or persistent refusal to conform to institution regulations occurring at any time during his confinement in said prison shall subject the prisoner, at the discretion of the warden and the commissioner, to the loss of all or any portion of the time earned. . . ."

General Statutes § 18-7a provides in relevant part: "(c) Any person sentenced to a term of imprisonment for an offense committed on or after

tenced to terms of imprisonment for crimes committed on or after October 1, 1994. We conclude that the good time statutes are not applicable to such persons.

The material facts are not in dispute. On November 30, 1994, the petitioner, Jorge Velez, committed a rob-

July 1, 1983, may . . . while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years. . . ."

General Statutes § 18-98a provides in relevant part: "Each person committed to the custody of the Commissioner of Correction who is employed within the institution to which he was sentenced . . . for a period of seven consecutive days . . . may have one day deducted from his sentence for such period, in addition to any other earned time, at the discretion of the Commissioner of Correction."

General Statutes § 18-98b provides in relevant part: "In addition to any commutation or diminution of sentence or any meritorious time service award which may have been granted under section 18-7 or 18-7a any inmate committed to the custody of the Commissioner of Correction for a definite term, or for a term with a minimum sentence imposed, may have not more than one hundred and twenty days deducted from any one continuous term of imprisonment as an outstandingly meritorious performance award in the discretion of the Commissioner of Correction for exceptional personal achievement, accomplishment and other outstandingly meritorious performance, provided any serious act of misconduct or insubordination or refusal to conform to institution regulations occurring at any time during his confinement shall subject the prisoner, at the discretion of the warden and the commissioner, to the loss of all, or any portion, of any time awarded under this section. . . ."

General Statutes § 18-98d provides in relevant part: "(a) Any person who is confined . . . for an offense committed on or after July 1, 1981 . . . shall, if subsequently imprisoned, earn a reduction of his sentence equal to the number of days which he spent in such facility from the time he was placed in presentence confinement to the time he began serving the term of imprisonment imposed . . . .

"(b) In addition to any reduction allowed under subsection (a), if such person obeys the rules of the facility he may receive a good conduct reduction of any portion of a . . . sentence not suspended at the rate of ten days . . . for each thirty days of presentence confinement; provided any day spent in presentence confinement by a person who has more than one information pending against him may not be counted more than once in computing a good conduct reduction under this subsection. . . ."

bery in violation of General Statutes § 53a-135. He was convicted and, on July 21, 1995, he was sentenced to an effective term of imprisonment of eight years, with execution suspended after three years, and a three year period of probation.[3] The commissioner of correction (commissioner), interpreting § 18-100d as making the petitioner ineligible for any reduction in his sentence for good conduct, calculated December 17, 1997, as the petitioner's release date. This calculation did not credit the petitioner for prison good time pursuant to § 18-7a (c), presentence jail good time pursuant to § 18-98d (b), or seven day workweek good time pursuant to § 18-98a.[4] If all the foregoing good time credit had been applied to the petitioner's sentence, his release date would have been in April, 1997.

On August 28, 1997, the petitioner, while still incarcerated, filed this petition for a writ of habeas corpus alleging that he had a statutory right to good time and that he had been confined beyond his lawful release date. The trial court concluded that, pursuant to § 18-100d, the petitioner was not entitled to good time credits and dismissed his petition. Upon the granting of certification, the petitioner appealed to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). We affirm the judgment of the trial court dismissing the petition.

We begin by noting that the interpretation of § 18-100d is a matter of statutory construction. "Statutory

[3] On that same date, the trial court also imposed sentences upon the petitioner for convictions of burglary, larceny, failure to appear and probation violation. The court ordered that those additional sentences, the longest of which was a three year term of imprisonment, run concurrently with the petitioner's robbery sentence. The eight year sentence imposed upon the petitioner for robbery is his controlling sentence.

[4] The petitioner does not claim that he was entitled to outstandingly meritorious good time pursuant to § 18-98b.

construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Shawhan* v. *Langley*, 249 Conn. 339, 343, 732 A.2d 170 (1999); *General Motors Corp.* v. *Dohmann*, 247 Conn. 274, 286, 722 A.2d 1205 (1998); *Ferrigno* v. *Cromwell Development Associates*, 244 Conn. 189, 195, 708 A.2d 1371 (1998).

Before we address the petitioner's claim regarding the effect of § 18-100d upon the availability of good time pursuant to §§ 18-7a (c), 18-98d (b) and 18-98a, we will undertake a general overview of the statutory scheme governing the release of prisoners. Prior to the enactment of § 18-100d in 1993; see Public Acts 1993, No. 93-219 (P.A. 93-219); the release of prisoners before the completion of their court-imposed sentences was governed in pertinent part by three statutory entitlements. First, the good time statutes set forth formulae by which incarcerated persons could earn a *commutation* of their court-imposed sentences. *Seno* v. *Commissioner of Correction*, 219 Conn. 269, 270 n.1, 593 A.2d 111 (1991); *Laden* v. *Warden*, 169 Conn. 540, 541, 363 A.2d 1063 (1975). In other words, the good time statutes provided a means by which an inmate could earn a reduction of his or her court-imposed sentence, thereby advancing the date on which he or she no longer would be subject to the authority of the department of correction (department) or, if he or she had been granted parole, the authority of the board of parole (board).

Second, with respect to persons sentenced to a definite term of imprisonment of one year or less, General Statutes (Rev. to 1993) § 18-100c[5] provided that upon completion of one half of their court-imposed sentences, less any good time credit they may have earned pursuant to the good time statutes, such persons were eligible for placement in a community correctional program such as a halfway house (community placement). Thus, General Statutes (Rev. to 1993) § 18-100c authorized the commissioner to include the good time that an inmate had earned pursuant to the good time statutes in the calculation of the inmate's community placement eligibility date. Prisoners released from incarceration and granted community placement pursuant to General Statutes (Rev. to 1993) § 18-100c remained under the authority of the commissioner. See General Statutes (Rev. to 1993) § 18-100 (e).

Third, with respect to persons sentenced to a definite term of imprisonment exceeding one year, General Statutes (Rev. to 1993) § 54-125a[6] provided that upon completion of one half of their court-imposed sentences,

---

[5] General Statutes (Rev. to 1993) § 18-100c provides: "A person convicted of a crime who is incarcerated on or after July 1, 1993, who received a definite sentence of one year or less, and who has been confined under such sentence for not less than one-half of the sentence imposed by the court, less such time as may have been earned under the [good time statutes], may be released pursuant to subsection (e) of section 18-100 or to any other community correction program approved by the commissioner of correction."

[6] General Statutes (Rev. to 1993) § 54-125a provides in relevant part: "(a) A person convicted of one or more crimes who is incarcerated on or after October 1, 1990, who received a definite sentence or aggregate sentence of more than one year, and who has been confined under such sentence or sentences for not less than one-half of the aggregate sentence or one-half of the most recent sentence imposed by the court, whichever is greater, may be allowed to go at large on parole in the discretion of the panel of the board of parole for the institution in which the person is confined, if (1) it appears from all available information, including any reports from the commissioner of correction that the panel may require, that there is reasonable probability that such inmate will live and remain at liberty without violating the law, and (2) such release is not incompatible with the welfare of society. . . . The parolee shall, while on parole, remain in the

persons sentenced to more than one year were eligible for parole. General Statutes (Rev. to 1993) § 54-125a, the statute governing parole, did not authorize the commissioner to include good time in the calculation of an inmate's parole eligibility date. Further, General Statutes (Rev. to 1993) § 54-125a provided that parolees were subject to the authority of the board, which at that time was part of the department.

To summarize, prior to the enactment of P.A. 93-219: (1) pursuant to § 18-100c, inmates sentenced to a term of imprisonment of one year or less were eligible for community placement, and the commissioner was authorized to include good time in the calculation of an inmate's community placement eligibility date; (2) pursuant to § 54-125a, inmates sentenced to a term of imprisonment exceeding one year were eligible for parole upon completion of one half of their court-imposed sentences; and (3) pursuant to the good time statutes, all inmates, regardless of the length of their sentences, were eligible to earn good time, which operated to commute a portion of their court-imposed sentences.

In enacting P.A. 93-219, the legislature effected three relevant changes to the statutory scheme governing the release of prisoners. First, § 6 of P.A. 93-219 transferred from the department to an independent board of parole the supervision of all persons released from the custody of the department, other than those granted community placement pursuant to § 18-100c. See General Statutes § 54-124c.[7]

legal custody and control of the board until the expiration of the maximum term or terms for which he was sentenced. . . ."

[7] General Statutes § 54-124c provides: "Notwithstanding any provision of the general statutes, on and after July 1, 1994, the Board of Parole shall be responsible for the supervision of all persons released from confinement in a correctional institution or facility into the community, except persons released pursuant to section 18-100c, until their sentence to the custody of the Commissioner of Correction is completed."

Second, §§ 1 and 2 of P.A. 93-219 amended §§ 18-100c and 54-125a, respectively, to increase, from one to two years, the sentence one could receive, and still be eligible for placement in a community correctional program.[8] As amended, § 18-100c[9] provides for community placement of prisoners sentenced to a term of imprisonment of two years or less, and § 54-125a[10] provides for parole of prisoners sentenced to a term of imprisonment exceeding two years.

Third, § 10 of P.A. 93-219 created a new statute codified as § 18-100d, the statute principally at issue in this appeal. Section § 18-100d provides: *Notwithstanding any other provision of the general statutes,* any person convicted of a crime committed on or after October 1, 1994, shall be subject to supervision by personnel of the Department of Correction or the Board of Parole

---

[8] Public Act 93-219, also enacted a technical amendment to § 18-100c to expand the statutory reference to the good time statutes to include all such statutes.

[9] General Statutes § 18-100c provides: "A person convicted of a crime who is incarcerated on or after July 1, 1993, who received a definite sentence of two years or less, and who has been confined under such sentence for not less than one-half of the sentence imposed by the court, less such time as may have been earned under the provisions of section 18-7, 18-7a, 18-98a, 18-98b or 18-98d, may be released pursuant to subsection (e) of section 18-100 or to any other community correction program approved by the Commissioner of Correction."

[10] General Statutes § 54-125a provides in relevant part: "(a) A person convicted of one or more crimes who is incarcerated on or after October 1, 1990, who received a definite sentence or aggregate sentence of more than two years, and who has been confined under such sentence or sentences for not less than one-half of the aggregate sentence or one-half of the most recent sentence imposed by the court, whichever is greater, may be allowed to go at large on parole in the discretion of the panel of the Board of Parole for the institution in which the person is confined, if (1) it appears from all available information, including any reports from the Commissioner of Correction that the panel may require, that there is reasonable probability that such inmate will live and remain at liberty without violating the law, and (2) such release is not incompatible with the welfare of society. . . . The parolee shall, while on parole, remain in the legal custody and control of the board until the expiration of the maximum term or terms for which he was sentenced. . . ."

*until the expiration of the maximum term or terms
for which he was sentenced.*" (Emphasis added.) By its
terms, § 18-100d requires that a person convicted of a
crime committed on or after October 1, 1994, remain
under the authority of either the department or the
board for the entire length of his or her court-imposed
sentence. Thus, the language of § 18-100d manifests an
intention that such persons be either incarcerated (i.e.,
under the authority of the department), placed in a
community correctional program (i.e., under the
authority of the department) or on parole (i.e., under
the authority of the board) during the *entire term* of
their court-imposed sentences.

Moreover, the phrase "*[n]otwithstanding any other
provision of the general statutes*"; (emphasis added);
in § 18-100d unequivocally indicates that the legislature
intended that the statutory requirement that persons
convicted of crimes committed on or after October 1,
1994, remain under the authority of the department or
the board for the entire length of the court-imposed
sentences, would override any statutory provisions to
the contrary. By its terms, therefore, § 18-100d indicates
that the legislature intended that the good time stat-
utes—statutes that operate to release inmates and per-
sons granted community placement from the authority
of the department and to release parolees from the
authority of the board after completion of only a portion
of their court-imposed sentences—no longer be applica-
ble to persons convicted of crimes committed on or
after October 1, 1994.

The legislative history of House Bill No. 6934, the bill
that eventually was enacted as P.A. 93-219, and codified
in part as § 18-100d, also indicates that the legislature
intended that § 18-100d render the good time statutes
inapplicable to persons convicted of crimes committed
on or after October 1, 1994. During the discussion of
the bill on the floor of the House of Representatives,

Representative Michael P. Lawlor, a sponsor of the bill, stated: "[This bill] requires parole supervision for parolees for the entire term of the sentence that had been imposed by the court. Under current law, parolees come off parole supervision at the time they max out on their sentence, which in most cases, is *two-thirds of the original sentence that was imposed.*" (Emphasis added.) 36 H.R. Proc., Pt. 22, 1993 Sess., pp. 7645–46. Representative Lawlor's statement, a clear reference to good time, is compelling evidence that the legislature intended that an inmate's court-imposed sentence remain in effect, and that persons convicted of crimes committed on or after October 1, 1994, no longer be able to "max out" their sentences pursuant to the good time statutes.

In November, 1994, moreover, in response to an inquiry by the commissioner regarding the effect of § 18-100d on the applicability of the good time statutes to persons convicted of crimes committed on or after October 1, 1994, the office of the attorney general rendered an opinion stating: "[Section 18-100d] has the effect of eliminating the impact that good time credits heretofore have had in reducing length of sentence and accelerating discharge. . . . [T]he maximum terms of sentences imposed for crimes committed on or after October 1, 1994, are not reducible by good time credits. For such crimes, the entire sentence must be served under the supervision of the Department of Correction or the Board of Parole." Opinions, Conn. Atty. Gen. No. 94-031 (November 23, 1994). " 'Although an opinion of the attorney general is not binding on a court, it is entitled to careful consideration and is generally regarded as highly persuasive.' " *Connecticut State Medical Society* v. *Board of Examiners in Podiatry*, 208 Conn. 709, 720, 546 A.2d 830 (1988).

On the basis of the opinion rendered by the office of the attorney general, the commissioner declined to

award good time to inmates incarcerated for crimes committed on or after October 1, 1994. Thereafter, in 1997, the legislature enacted legislation titled "An Act Concerning the Forfeiture of Good Time Credits." Public Acts 1997, No. 97-169. During the discussion on the floor of the House of Representatives of House Bill No. 7058, the bill that eventually was enacted as Public Acts 1997, No. 97-169, Representative Lawlor, *a 1993 sponsor of the bill that eventually was codified as § 18-100d*, stated: "I'd like to point out two things. First of all, *persons committing crimes after October 1, 1994, they're no longer earning good time credits*. This legislation would only apply to the 7000 or so inmates who committed their crimes prior to October 1, 1994. So there's no more good time in Connecticut, but there are some people in the system who were sentenced at a time when there was still good time, and of course those rules stay with them." (Emphasis added.) 40 H.R. Proc., Pt. 7, 1997 Sess., p. 2433. Representative Lawlor's remarks are clear evidence of the legislature's awareness of, and acquiescence in, the interpretation given to § 18-100d by the attorney general and the commissioner. See *State* v. *Grullon*, 212 Conn. 195, 210, 562 A.2d 481 (1989) (considering legislative history of subsequent enactment in determining legislative intent of prior legislation); see also *State* v. *McVeigh*, 224 Conn. 593, 621, 620 A.2d 133 (1993) (considering subsequent enactment in determining legislative intent of prior legislation); *In re Valerie D.*, 223 Conn. 492, 542, 613 A.2d 748 (1992) (same). Again, that interpretation is that § 18-100d rendered the good time statutes inapplicable to persons convicted of crimes committed on or after October 1, 1994.

The petitioner nonetheless claims that § 18-100d was not intended to make the good time statutes inapplicable to persons incarcerated for crimes committed on

or after October 1, 1994. In the petitioner's view, § 18-100d was intended, instead, to alter the manner in which the good time statutes operate with respect to such persons by replacing sentence commutations with an automatic system of parole when a prisoner has served his sentence less good time earned. Specifically, the petitioner contends that the legislature intended that: (1) persons sentenced to imprisonment for crimes committed after October 1, 1994 continue to earn good time pursuant to the good time statutes; (2) despite language of the good time statutes stating that good time operates to *reduce court-imposed sentences*, good time no longer would reduce court-imposed sentences; (3) if, after serving one half of their court-imposed sentences, such prisoners are granted parole by the board pursuant to § 54-125a, any earned good time would provide them with no benefit; but (4) if, after serving one half of their court-imposed sentences, such prisoners are denied parole by the parole board, their earned good time would provide them with automatic parole on the dates that, but for the enactment of § 18-100d, would have been their release dates under the good time statutes.[11] This automatic parole would require no action or exercise of discretion by the board. To support his proposed construction of § 18-100d, the petitioner primarily relies on: (1) the legislature's use of the word "supervision" in § 18-100d; (2) claimed inconsistencies between the commissioner's interpretation of § 18-100d and other statutory provisions; and (3) references to good time made in a report issued by the legislative program review and investigations committee.[12]

---

[11] The petitioner makes no mention of the effect that § 18-100d would have on persons who are not granted community placement pursuant to § 18-100c. Presumably, in the petitioner's view, such persons also would be eligible for automatic parole.

[12] See generally Legislative Program Review and Investigations Committee, Board of Parole and Parole Services (1993).

We first address the petitioner's argument regarding the language of § 18-100d. Section 18-100d requires that a "person convicted of a crime committed on or after October 1, 1994 . . . be subject to *supervision* by [the commissioner] or the [board] until the expiration of the maximum term or terms for which he was sentenced." (Emphasis added.) Distinguishing between "custody" and "supervision," the petitioner claims that the legislature's use of the word "supervision" in § 18-100d and its omission of the word "custody" from the statute must indicate that the legislature intended that all inmates be released at some point during their sentences from the "custody" of the commissioner (i.e., incarceration) into a program of correctional "supervision" (i.e., community placement or parole). The legislative history of § 18-100d, however, reveals that the word "supervision" in § 18-100d was intended to refer to incarceration as well as to community placement and parole. See 36 H.R. Proc., Pt. 22, 1993 Sess., p. 7646. Specifically, in the discussion on the floor of the House of Representatives of Substitute House Bill No. 6934, the bill that eventually was enacted as P.A. 93-219, and codified in part as § 18-100d, Representative Lawlor stated: "So in essence, this change will maintain people on parole for the full, in the case of a ten year sentence, for the full ten years rather than for just two or three years after their release maybe only six years of *total supervision both in the facility and outside the facility* and this has the obvious benefit of keeping people under supervision with the opportunity to return them immediately to prison based on a violation for the full term of the original sentence imposed." (Emphasis added.) Id. Representative Lawlor's statement that "supervision" may occur both inside and outside a correctional facility reveals that, in the context of § 18-100d, the term "supervision" was intended to include incarceration as well as community placement and parole.

The petitioner's next claim is that a construction of § 18-100d as rendering the good time statutes inapplicable to persons convicted of crimes committed on or after October 1, 1994 cannot be harmonized with: (1) the provision of § 18-100c that authorizes the commissioner to include good time earned by an inmate sentenced to a term of imprisonment of two years or less in the calculation of the date on which the inmate becomes eligible for community placement; or (2) the provision of General Statutes (Rev. to 1993) § 18-87f,[13] a statute that addressed prison overcrowding but was *repealed* in 1995, that authorized the commissioner, under certain emergency circumstances, to release inmates from custody early.

Contrary to the petitioner's view, we can discern no inconsistency between § 18-100d and § 18-100c. Construing § 18-100d as making persons convicted of crimes committed on or after October 1, 1994, ineligible for good time results in such persons earning no good time. Consequently, in calculating the date of their eligibility for community placement pursuant to § 18-100c, the commissioner simply would not subtract any good time from one half of their court-imposed sentences, and they would have to serve one half of their sentences before becoming eligible for the transition to community placement.

---

[13] General Statutes (Rev. to 1993) § 18-87f provided in relevant part: "(e) In the event that [other measures taken to reduce prison overcrowding are] insufficient . . . the commissioner shall first further reduce the parole eligibility dates of prisoners serving indeterminate or indefinite sentences by thirty days, and then further reduce the maximum sentences of prisoners serving indeterminate or indefinite sentences and the sentences of prisoners serving determinate sentences, by increments of one day, to a maximum of thirty days, until prisoner population . . . is reduced to prisoner capacity. Eligible prisoners may be released on parole or to an approved community residence. . . .

"(f) . . . No prisoner shall be released from custody under this section unless he has served at least . . . one-half of his determinate sentence . . . including [good time earned] under sections 18-98c and 18-98d. . . ."

With respect to the petitioner's claimed inconsistency between § 18-100d and General Statutes (Rev. to 1993) § 18-87f, § 18-87f provided in relevant part: "(e) In the event that [other measures taken to reduce prison overcrowding are] insufficient to reduce prisoner population . . . to prisoner capacity, the commissioner shall first further reduce the parole eligibility dates of prisoners serving indeterminate or indefinite sentences by thirty days, and then further reduce the maximum sentences of prisoners serving indeterminate or indefinite sentences and the sentences of prisoners serving determinate sentences, by increments of one day, to a maximum of thirty days, until prisoner population . . . is reduced to prisoner capacity. Eligible prisoners may be released on parole or to an approved community residence. . . . (f) . . . No prisoner shall be released from custody under this section unless he has served at least one-half of his minimum indeterminate sentence or one-half of his determinate sentence, but shall have served not less than sixty days, including [good time earned under § 18-98d]. . . ." As a matter of statutory construction, a statute such as § 18-87f, which applied only under specific, emergency conditions, is presumed to prevail over more general statutory provisions dealing with the same overall subject matter. *State* v. *Torres,* 206 Conn. 346, 359, 538 A.2d 185 (1988). Moreover, to the extent that § 18-87f, after the enactment of § 18-100d and before its repeal, authorized the commissioner to consider good time earned by an inmate in determining eligibility for early parole, it is not inconsistent with § 18-100d. Pursuant to § 18-100d, persons convicted of crimes committed on or after October 1, 1994 simply would have earned no good time to be included in the calculation of their eligibility for early parole pursuant to § 18-87f, and the commissioner could have determined their parole eligibility accordingly.

Furthermore, it is the petitioner's proposed construction of § 18-100d that cannot be harmonized with other

statutory provisions. Section 54-125a, the statute governing parole, does not provide the commissioner with any authority to include good time in the calculation of an inmate's parole eligibility date, but rather requires the service of one half of the imposed sentence. Moreover, § 54-125a (a) explicitly provides that the determination of whether to grant parole rests with the discretion of a panel of the board and is not automatic on the accumulation of good time. In addition, General Statutes § 54-125b,[14] which, like § 18-100d, was enacted as part of P.A. 93-219, provides that an inmate may be granted parole without a hearing before a panel of the board *only if an employee of the board has reviewed the inmate's case and recommended that parole be granted and such recommendation has been approved by at least two members of a panel of the board.* During the discussion of Substitute House Bill No. 6934 on the floor of the Senate, Senator George C. Jepsen stated: "[T]his bill . . . puts [prisoner releases] in the hands of the [board] . . . that ought to restore rationality by allowing the [board] to . . . [release prisoners] on not a random, but at least a basis that involves statutory criteria." 36 S. Proc., Pt. 10, 1993 Sess., p. 3463. The fact that the legislature enacted §§ 18-100d and 54-125b, and amended § 54-125a, in the same act; see P.A. 93-219; is compelling evidence that the legislature did not intend § 18-100d to create an automatic version of parole, without board action, as advocated by the petitioner.

---

[11] General Statutes § 54-125b provides in relevant part: "(a) A person may be allowed to go on parole in accordance with section 54-125a without a parole hearing being conducted by a panel of the Board of Parole if (1) an employee of the Board of Parole has reviewed the inmate's case and recommended parole be granted to such person and (2) such recommendation has been approved by at least two members of a panel of the board. A parole hearing shall be conducted by a panel of the Board of Parole if a victim, as defined in sections 54-201 and 54-226, requests such a hearing. . . ."

Finally, we recognize that certain examples included in a report prepared in 1993 by the legislative program review and investigations committee[15] support the petitioner's proposed construction of § 18-100d. In light of the language and legislative history of § 18-100d and the legislature's awareness of, and acquiescence in, the interpretation given to § 18-100d by the commissioner and the attorney general, however, that report simply does not provide a proper basis for a conclusion that § 18-100d was intended to adopt the system of automatic parole urged by the petitioner—a system that would provide automatic parole to persons, who like the petitioner, previously have been deemed by the board to be unfit for parole and denied parole. See *Iovieno* v. *Commissioner of Correction*, 242 Conn. 689, 699–700, 699 A.2d 1003 (1997) (departure from existing statutory law must clearly be expressed); *Gomeau* v. *Forrest*, 176 Conn. 523, 527, 409 A.2d 1006 (1979) (radical departure from established statutory scheme must be expressed in unequivocal language and may not be implied).

On the basis of the language and legislative history of § 18-100d, and of the legislature's apparent awareness of, and acquiescence in, the interpretation given to § 18-100d by the attorney general and the commissioner, we conclude that § 18-100d renders the good time statutes inapplicable to persons sentenced to a term of imprisonment for crimes committed on or after October 1, 1994.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[15] See footnote 12 of this opinion.