[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 7588
On June 30, 1995, the petitioner entered guilty pleas in docket numbers CR94-55703, CR94-55704, CR94-555 12, CR94-555 13, CR94-55821 and CR94-55822. Am. Pet., at 1. The petitioner was sentenced on November 15, 1995 in these six dockets, receiving a total effective sentence of twenty-five years, execution suspended after eleven years, and five years probation. Id. On March 10, 2000, the petitioner filed a pro se application for a writ of habeas corpus, said petition being amended on July 31, 2001 and filed with the court on August 1, 2001. The amended petition raises two claims, namely that: 1) the "[r]espondent has illegally lengthened petitioner's term of imprisonment by not crediting petitioner's total effective sentence with the statutory good time credits earned by the petitioner, pursuant to Connecticut General Statutes §§18-7a (c), 18-98a, 18-98b and 18-98d (b);" and 2) General Statutes "§ 18-100d as applied to petitioner is an unconstitutional ex post facto law because it directly increased his punishment, after commission of the offenses in Docket numbers CR94-55703, CR94-55704, CR94-555 12, CR94-55821, and CR94-55822." Id., at 5 and 7-8.
The mittimus for each of the six sentences shows the followingto-serve portions for each sentence:[1]
Docket Offense Date Sentencing Date
CR94-55703 August 24, 1994 November 15, 1995 Count One: 5 years Count Two: 11 years TES: 11 years Probation: 5 years Counts One Two concurrent with each other.
CR94-55704 August 4, 1994 November 15, 1995 Count One: 10 years Count Two: 5 years TES: 10 years Probation: 5 years Counts One Two concurrent with each other and concurrent with CR94-55703.
CR94-55512 August 9, 1994 November 15, 1995 Count One: 2 years Count Two: 2 years TES: 2 years Counts One Two CT Page 7589 concurrent with each other, and concurrent with MV94-3 19659 and concurrent with CR94-55703.
CR94-55513 October 22, 1994 November 15, 1995 Count One: 11 years Count Two: 5 years Count Three: 1 year TES: 11 years Probation: 5 years Counts One, Two and Three concurrent with each other and concurrent with CR94-55703.
CR94-55821 September 1, 1994 November 15, 1995 Count One: 11 years TES: 11 years Probation: 5 years Concurrent with CR94-55703.
CR94-55822 August 5, 1994 November 15, 1995 Count One: 10 years TES: 10 years Probation: 5 years Concurrent with CR94-55703.
The total effective sentence for all six dockets, based on the sentence imposed in CR94-55703, was 25 years, execution suspended after 11 years, with 5 years probation. Pet'r Ex. 3, at 1.[2]
As previously indicated, the first count of the amended petition alleges that the respondent has illegally lengthened the petitioner's term of imprisonment by failing to credit the petitioner's total effective sentence with the statutory good time credits earned by the petitioner. Am. Pet., at 5. The petitioner claims that this failure to credit the petitioner with the earned good time violates both his right to due process under the state and federal constitutions as well as General Statutes § 18-7. Id. The petitioner also places reliance onRivera v. Commissioner of Correction, 254 Conn. 214, 756 A.2d 1264
(2000), where the Supreme Court concluded that "a prisoner who is serving multiple concurrent and consecutive sentences is entitled to have his total number of earned good time credits applied to reduce his total effective term of imprisonment." Id., at 217. CT Page 7590
The respondent argues, however, that the petitioner's controlling sentence has been properly determined, that Rivera is not controlling given the facts of this case, and that instead Velez v. Commissioner ofCorrection, 250 Conn. 536, 738 A.2d 604 (1999), controls the outcome. Resp't Return, at 2-3. The Supreme Court in Velez concluded that General Statutes § 18-100d rendered existing good time statutes, §§ 18-7, 1-7a (c), 18-98b and 18-98d (b), "inapplicable to persons who [are] sentenced to terms of imprisonment for crimes committed on or after October 1, 1994. Velez v. Commissioner of Correction, supra,250 Conn. 537-8. While the respondent admits that the petitioner has earned good time credits on those sentences which are entitled to earn good time, the respondent relies on General Statutes § 18-100d, as interpreted by Velez, as prohibiting the credits earned on sentences entitled to earn good time to be applied toward the petitioner's controlling sentence, which is not a good time earning sentence. Resp't Return, at 3 and 6.
Five of the six sentences imposed on November 15, 1995 were for offenses that occurred prior to October 1, 1994. The sole sentence for an offense committed on or after October 1, 1994 is the sentence imposed in docket number CR94-55513. Under General Statutes § 18-100d, which took effect July 1, 1993, "[n]otwithstanding any other provision of the general statutes, any person convicted of a crime committed on or after October 1, 1994, shall be subject to supervision by personnel of the Department of Correction or the Board of Parole until the expiration of the maximum term or terms for which he was sentenced." "By its terms, § 18-100d requires that a person convicted of a crime committed on or after October 1, 1994, remain under the authority of either the department or the board for the entire length of his or her court-imposed sentence." Velez v. Commissioner of Correction, supra, 250 Conn. 544.
The Velez court held that "the phrase `notwithstanding any otherprovision of the general statutes' in § 18-100d unequivocally indicates that the legislature intended that the statutory requirement [imposed via § 18-100d] . . . would override any statutory provisions to the contrary. By its terms, therefore, § 18-100d indicates that the legislature intended that the good time statutes — statutes that operate to release inmates and persons granted community placement from the authority of the department and to release parolees from the authority of the board after completion of only a portion of their court-imposed sentences — no longer be applicable to persons convicted of crimes committed on or after October 1, 1994." (Emphasis in original.) Id. "Thus, the language of § 18-100d manifests an intention that such persons be either incarcerated (i.e., under the authority of the department), placed in a community correctional program CT Page 7591 (i.e., under the authority of the department) or on parole (i.e., under the authority of the board) during the entire term of their court-imposed sentence." (Emphasis in original.) Id.
The petitioner's sentence in docket number CR94-55513 is for an offense that was committed on October 22, 1994. This Court finds, consequently, that General Statutes § 18-100d renders all good time statutes inapplicable to CR94-55513. The petitioner's five other sentences at issue in this petition, however, do earn good time. The respondent has the duty to calculate a discharge date for the petitioner which, based on an approach that must harmonize all relevant statutes, correctly arrives — at accurate estimated discharge date. In the context of multiple concurrent sentences, the method employed by the respondent requires a determination, in accordance with General Statutes § 53a-38 (b), of which sentence has the longest to run. Payton v. Albert, 209 Conn. 23,32, 547 A.2d 1 (1988). § 53a-38 (b) provides, in relevant part, that "[i]f the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest to run[.]" (Emphasis added.)
Mary Jane Steele, a Records Specialist II with the Department of Correction, testified at the habeas corpus trial that when sentences are merged under the statutes, the individual sentences do not disappear. Tr. (Feb. 21, 2002), at 49. Ms. Steele also testified that as far as the Department of Correction is "concerned, technically all the sentences [an inmate is serving] control. They're all active sentences." Id. When Ms. Steele was asked whether this approach is utilized by the department "because the controlling sentence can change at any given time," Ms. Steele responded "Correct." Id. In other words, the vacating of convictions and the awarding and forfeiture of good time on sentences that are eligible to earn good time renders the estimated discharge date fluid. In the present case, the respondent has determined, based on a determination that the sentence in CR94-55513 has the longest to run and is the controlling sentence, that the petitioner's estimated release date is October 29, 2005. Id., at 50.
As the Rivera court noted, "the use of the term `estimating' in §18-7 merely reflects the reality that an inmate may forfeit some of the good time credit that he or she otherwise would be expected to accrue under the applicable subsections of § 18-7a. of course, the forfeiture of good time credit can occur regardless of which subsection of § 18-7a happens to apply in any given case. In fact, the petitioner in this case had forfeited good time credit on several occasions, thereby causing his estimated release date to change." Riverav. Commissioner of Correction, supra, 254 Conn. 240. CT Page 7592
In the present case, the petitioner has earned good time on sentences and has advanced his estimated release date for those sentences. The petitioner is also serving a non-good time earning sentence. The time sheet maintained by the respondent for the non-good time earning sentence, the sentence imposed in CR94-555 13, shows that the petitioner has received a total of 381 days of jail credit, said credit advancing the discharge date for that sentence to October 29, 2005. Pet'r Ex. 9. The time sheet for one of the good time earning sentences, CR94-55821, shows that in late 1995 the posting of jail credit moved the estimated release date for that sentence to a date prior to October 29, 2005; Pet'r Ex. 10, at 8; and that the monthly postings of good time credits to that sentence have continued to advance the estimated release date for the sentence in CR94-55821.
The petitioner argues that there is additional support for the claim that the sentence in CR94-555 13 is entitled to have good time posted to that sentence because of an award of fifteen (15) days of outstandingly meritorious performance award (OMPA); Am. Pet., at 5; which according to the evidence submitted by the petitioner, was posted on the petitioner's sole non-good time earning sentence in CR94-555 13. Pet'r Ex. 1; seealso Tr. (Feb. 21, 2002), at 30 and 60-1. The petitioner was unable to recall who told him he would receive the OMPA credit, and even though the petitioner testified that he received a slip when he was awarded the OMPA credit which he still retained somewhere in his locker, the slip was not offered as evidence. Id., at 60-1. According to Ms. Steele, however, the time sheet for the sentence in CR94-555 13, which was entered as petitioner's exhibit 1, is inaccurate because all the posted credits do not advance the petitioner's estimated release date. Id., at 43-4. The time sheet which correctly reflects the petitioner's estimated release date of October 29, 2005 is, according to the respondent, the time sheet for the sentence in CR94-55513 entered as petitioner's exhibit 9. Id., at 50. Based on the fact that the time sheet entered as petitioner's exhibit 9 was printed out approximately two years after the time sheet entered as petitioner's exhibit 1, together with the fact that the estimated release date entries on petitioner's exhibit 1 never change after all posting entries, this Court finds credible Ms. Steele's testimony that petitioner's exhibit 9 correctly reflects the petitioner's estimated release date.
The petitioner relies on Rivera in support of the contention that he is entitled to have the credits posted on good time earning sentences applied to his non-good time earning sentence. This Court finds thatRivera is distinguishable from the present case. "The principal issue [inRivera was] whether a prisoner who is serving multiple concurrent and consecutive sentences is entitled to have his total number of earned good time credits applied to reduce his total effective term of imprisonment." CT Page 7593Rivera v. Commissioner of Correction, supra, 254 Conn. 217. Notably, all the sentences at issue in Rivera were sentences imposed for offenses occurring prior to October 1, 1994. Id., at 217-8. The petitioner inRivera, who had received a sentence ordered to run consecutive to other sentences running concurrent to one another, filed a habeas petition alleging that the Commissioner of Correction had improperly calculated the petitioner's good time as a result of "failing to construe the multiple sentences as one continuous term under General Statutes § 18-7
for the purposes of calculating good time." Id., at 219-20.
The fundamental issue in Rivera was whether § 18-7a (c) was inconsistent with § 18-7, or whether the former abrogated the latter's continuous term requirement. Id., at 242-3. Such inconsistency or abrogation would have defeated the petitioner's argument that his multiple sentences comprised one continuous term. The Supreme Court noted that "[i]f the legislature had intended by enacting § 18-7a (c) to do away with the longstanding policy of aggregation of multiple sentences, it could easily have said so." Id., at 242. "Because §§ 18-7 and 18-7a
(c) are not inconsistent with each other, we will not presume that §18-7a (c) abrogates the one continuous term requirement of § 18-7 in the absence of a convincing showing to the contrary." Id., at 243. The respondent in Rivera was unable to make such a showing. Id.
§ 18-7 states in relevant part that "[w]hen any prisoner is held under more than one conviction, the several terms of imprisonment, imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn underthe provision of this section." (Emphasis added.) § 18-7a (c) states in relevant part that "[a]ny person sentenced to a term of imprisonment for an offense committed of or after July 1, 1983, may . . . earn areduction of his sentence as such sentence is served[.]" (Emphasis added.) The language chosen by the legislature in §§ 18-7 and 18-7a
(c) shows that the good time must be earned. But as the Supreme Court has held in Velez, "the phrase `notwithstanding any other provision of thegeneral statutes' in § 18-100d unequivocally indicates that the legislature intended that the statutory requirement imposed via §18-100d would override any statutory provisions to the contrary. By its terms, therefore, § 18-100d indicates that the legislature intended that the good time statutes — statutes that operate to release inmates and persons granted community placement from the authority of the department and to release parolees from the authority of the board after completion of only a portion of their court-imposed sentences — no longer be applicable to persons convicted of crimes committed on or after October 1, 1994." Velez v. Commissioner of Correction, supra,250 Conn. 544. CT Page 7594
Based upon the foregoing, this Court finds that applying good time credits earned by the petitioner on good time earning sentences to his non-good time earning sentence would violate the unequivocally-stated legislative intention that sentences imposed for offenses committed on or after October 1, 1994, do not earn good time. The Supreme Court explicitly held in Velez that the intent of § 18-100d to render good time statutes inapplicable to persons convicted of crimes committed on or after October 1, 1994, means that statutes such as §§ 18-7, 18-7a
(c), 18-98a, 18-98b and 18-98d (b), which are contrary to § 18-100d, do not apply to non-good time earning sentences such as the petitioner's sentence in CR94-555 13. Id., at 537-8. Consequently, the petitioner's sentence in docket number CR94-55513 neither earns good time nor is it considered as part of one continuous term for the purpose of estimating the amount of commutation. This Court finds, furthermore, that the respondent has correctly estimated, based on a determination that the sentence in CR94-55513 has the longest to run and is the controlling sentence, that the petitioner's estimated release date is October 29, 2005. The petitioner's claim that the respondent has illegally lengthened petitioner's term of imprisonment by not crediting petitioner's total effective sentence with the statutory good time credits earned by the petitioner, pursuant to Connecticut General Statutes §§ 18-7a (c),18-98a, 18-98b and 18-98d (b), is without merit.
The petitioner's second claim is that General Statutes "§ 18-100d
as applied to the petitioner is an unconstitutional ex post facto law because it directly increased his punishment, after commission of the offenses in Docket numbers CR94-55703, CR94-55704, CR94-55512, CR94-55821 and CR94-55822." Am. Pet., at 7-8. "Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Johnson v. Commissioner of Correction, 258 Conn. 804, 817,786 A.2d 1091 (2002). "[T]he controlling inquiry is whether retroactive application of the change in the law creates a sufficient risk of increasing the measure of punishment attached to the covered crimes."Id., at 818.
§ 18-100d was enacted via Public Act 93-219 and had an effective date of July 1, 1993. The offense date for docket number CR94-55513 is October 22, 1994, a date subsequent to the effective date of § 18-100d. The effect of § 18-100d is to render all good time statutes inapplicable to sentences committed on or after October 1, 1994. While it is correct that five of the sentences at issue in this petition are good time earning sentences, CR94-555 13 neither earns good time nor is subject to other good time statutes. The petitioner's ex post facto argument fails because § 18-100d does not apply to the petitioner's CT Page 7595 five good time earning sentences; instead, § 18-100d applies to the petitioner's non-good time earning sentence, which was imposed for an offense committed on or after October 1, 1994. This Court finds, consequently, that there is no ex post facto increase in punishment, for the petitioner did not receive a greater punishment beyond what was prescribed when the offense in CR94-555 13 was consummated than what the legislature intended when it enacted § 18-100d. As a result, the petitioner's second claim is without merit.
Based upon this Court's conclusion that the claims raised in the amended petition are without merit, the petition for a writ of habeas corpus is denied.
 ____________________ GRAZIANI, J.