CARLOS M. RIVERA *v.* COMMISSIONER
OF CORRECTION
(SC 15938)

Callahan, C. J., and Borden, Norcott, Katz,
Palmer, McDonald, Vertefeuille, Js.[1]

---

[1] The listing of justices reflects their seniority status on this court as of the date of oral argument.

This appeal originally was heard by a panel consisting of Justices Borden,

Berdon, Katz, Palmer, and McDonald. Subsequent to oral argument, the court, pursuant to Practice Book § 70-7 (b), sua sponte decided to consider the case en banc, and Chief Justice Callahan and Justice Norcott were added to the panel. Thereafter, Justice Vertefeuille was added to the panel to replace Justice Berdon, who retired prior to our decision in this case. The added panel members have read the record, briefs and oral argument transcripts.

Although Chief Justice Callahan reached the mandatory age of retirement before August 8, 2000, the date that this opinion is officially released, his continued participation on this panel is authorized by Public Acts 2000, No. 00-191, § 11.

*(Two justices dissenting in one dissenting opinion)*

Argued April 21, 1999—officially released August 15, 2000

*Steven R. Strom,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Gregory T. D'Auria, Richard T. Biggar* and *Madeline Melchionne,* assistant attorneys general, for the appellant (respondent).

*James Park,* certified legal intern, with whom was *Brett Dignam,* for the appellee (petitioner).

*Leonard W. Engel* filed a brief for the Connecticut Correctional Ombudsman, Inc., as amicus curiae.

*Temmy Ann Pieszak* filed a brief for the habeas corpus unit of the office of the chief public defender as amicus curiae.

*Opinion*

PALMER, J. The principal issue raised by this certified appeal is whether a prisoner who is serving multiple concurrent and consecutive sentences is entitled to have his total number of earned good time credits[2] applied to reduce his total effective term of imprisonment. We conclude that he is.

The relevant facts and procedural history are undisputed. "The petitioner [was placed] in the custody of the [respondent] commissioner of correction [(commissioner) on] June 17, 1989, when he was arrested and held in lieu of bond on a charge of a violation of General

---

[2] We note that there are two types of good time credit relevant to this appeal. The first type, presentence good time credit, also known as jail credit good time, is credit toward a reduction of an inmate's sentence that is earned for good behavior while the inmate is in custody prior to sentencing. Presentence good time credit is governed by General Statutes § 18-98d (b). See footnote 9 of this opinion. The second type of good time credit, known as statutory good time credit, is credit earned by a sentenced inmate for his or her good behavior. Statutory good time credit is governed by General Statutes § 18-7; see footnote 6 of this opinion; and General Statutes § 18-7a. See footnote 8 of this opinion.

These provisions, therefore, comprise "the statutory scheme under which an inmate may earn a diminution in his [or her] sentence by maintaining good behavior and compliance with prison rules throughout his [or her] term of imprisonment. . . . [G]ood time is a commutation of a sentence, affecting an inmate's parole and discharge dates, thereby serving an important rehabilitative function by allowing an inmate the opportunity to earn an earlier release for himself. . . . The purpose of the . . . good time award is to aid the rehabilitative process and to mitigate the severity of punishment by rewarding a prisoner for his good conduct." (Citations omitted; internal quotation marks omitted.) *Alexander* v. *Robinson*, 185 Conn. 540, 543–44, 441 A.2d 166 (1981).

Finally, it bears mention that, under General Statutes § 18-100d, "good time statutes [are] inapplicable to persons sentenced to a term of imprisonment for crimes committed on or after October 1, 1994." *Velez* v. *Commissioner of Correction*, 250 Conn. 536, 552, 738 A.2d 604 (1999). Our determination of the issue raised by this appeal, however, affects numerous persons who, like the petitioner, were sentenced for crimes committed before October 1, 1994.

Statutes [Rev. to 1989] § 21a-277 [a].[3] He earned nine-teen days of presentence good time when he was sentenced . . . on August 15, 1989, to a term of three years [imprisonment]. On February 9, 1990, while on supervised home release, the petitioner was arrested on other charges and reincarcerated. His home release status was revoked and he continued to serve time on his original three year sentence. On June 5, 1990, he was sentenced . . . to eight years [imprisonment] on one count of a violation of General Statutes [Rev. to 1989] § 53a-122[4] and eight years [imprisonment] on one count of a violation of General Statutes [Rev. to 1989] § 53a-167c.[5] Both [sentences] were to run concurrent[ly] [with] each other and concurrent[ly] with the sentence of three years he was already serving. [When his two

[3] General Statutes (Rev. to 1989) § 21a-277 (a) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than [marijuana], or a narcotic substance . . . shall be imprisoned not more than fifteen years . . . ."

[4] General Statutes (Rev. to 1989) § 53a-122 provides in relevant part: "(a) A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and: (1) The property or service, regardless of its nature and value, is obtained by extortion, (2) the value of the property or service exceeds ten thousand dollars, (3) the property consists of a motor vehicle having a value exceeding ten thousand dollars, or (4) the property is obtained by defrauding a public community, and the value of such property exceeds two thousand dollars. . . ."

[5] General Statutes (Rev. to 1989) § 53a-167c provides in relevant part: "(a) A person is guilty of assault of a peace officer or a fireman when, with intent to prevent a reasonably identifiable peace officer or fireman, as defined in section 53a-3, from performing his duty, (1) he causes physical injury to such peace officer or fireman, or (2) he throws or hurls, or causes to be thrown or hurled, any rock, bottle, can or other article, object or missile of any kind capable of causing physical harm, damage or injury, at such peace officer or fireman, or (3) he uses or causes to be used any mace, tear gas or any like or similar deleterious agent against such peace officer or fireman, or (4) he throws, hurls, or causes to be thrown or hurled, any paint, dye, or other like or similar staining, discoloring, or coloring agent, or any type of offensive or noxious liquid, agent or substance at such peace officer or fireman. . . ."

eight year concurrent sentences were imposed], the petitioner had earned ninety days of [statutory] good time credit on [his original three year sentence] including thirty days while on supervised home release in addition to the nineteen days of [presentence] good time prior to [his three year sentence] for a total of 109 days good time. On September 25, 1991, the petitioner received an additional consecutive one year sentence . . . for a violation of General Statutes [Rev. to 1989] § 53a-167c (a) (1) [as amended by Public Acts 1990, Nos. 90-157, § 2, and 90-250, § 2].

"The petitioner brought this habeas petition because the [commissioner], in calculating the petitioner's good time credit, did not give the petitioner nineteen days of presentence good time and ninety days of [statutory] good time by failing to construe the multiple sentences as one continuous term [under General Statutes § 18-7[6]]

---

[6] General Statutes § 18-7 provides in relevant part: "Powers and duties of warden. Punishment and reward of inmates. The warden shall manage the Connecticut Correctional Institution, Somers, subject to the direction of the Commissioner of Correction, and he shall keep all the prisoners employed in such labor as the commissioner orders, during the term of their imprisonment. He shall also keep a record of any punishment inflicted upon a prisoner, showing its cause, mode and degree, and a like record of the conduct of each prisoner. Any prisoner sentenced to a term of imprisonment prior to October 1, 1976, may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence, as follows: Sixty days for each year, and pro rata for a part of a year, of a sentence which is not for more than five years; and ninety days for the sixth and each subsequent year, and pro rata for a part of a year, and, in addition thereto, five days for each month as a meritorious time service award which may be granted in the discretion of the warden and the commissioner for exemplary conduct and meritorious achievement; provided any serious act of misconduct or insubordination or persistent refusal to conform to institution regulations occurring at any time during his confinement in said prison shall subject the prisoner, at the discretion of the warden and the commissioner, to the loss of all or any portion of the time earned. Said commutation of sentence shall apply to any prisoner transferred from the Connecticut Correctional Institution, Somers, to the John R. Manson Youth Institution, Cheshire. When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commuta-

for the purposes of calculating good time. The petitioner did not receive [presentence] good time credit or the [statutory] good time credits earned on the three year sentence, on the eight year sentence[s] or on the one year consecutive sentence.

"The [habeas] court agreed with the petitioner that on the basis of . . . § 18-7 and *Howard* v. *Commissioner of Correction*, 230 Conn. 17, 22, 644 A.2d 874 (1994), the petitioner's good time credits under [his original three year sentence] should be credited to his overall effective sentence of nine years. The court granted the habeas petition and awarded the petitioner 109 days of good time credit. The court denied the [commissioner's] petition for certification to appeal [pursuant to General Statutes § 52-470 (b)[7]] because the case was not one of first impression and because if the petitioner were held during the time of appeal, he would lose his 109 days of good time credit." *Rivera* v. *Commissioner of Correction*, 47 Conn. App. 752, 753–55, 706 A.2d 1383 (1998).

The commissioner appealed from the judgment of the habeas court to the Appellate Court, claiming that the habeas court improperly had: (1) denied his petition for certification to appeal; and (2) ordered that the 109 days of good time credit earned by the petitioner be applied toward the petitioner's total effective nine year

tion which he may earn under the provisions of this section. . . ."

In 1997, the legislature amended § 18-7. See Public Acts 1997, No. 97-245, § 2. That amendment is not relevant to this appeal. For convenience, we refer to the current revision of § 18-7 throughout this opinion.

[7] General Statutes § 52-470 (b) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release by or in behalf of one who has been convicted of crime may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or a judge of the Supreme Court or Appellate Court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

term of imprisonment. The Appellate Court dismissed the commissioner's appeal on the ground that the habeas court had not improperly denied the commissioner's petition for certification to appeal. In so concluding, the Appellate Court explained: "In *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 662 A.2d 718 (1995), the Supreme Court set the standard for deciding abuse of discretion on the issue of certification in such a case. [The Appellate Court] recognize[s] that [i]n enacting . . . § 52-470 (b), the legislature intended to discourage frivolous habeas appeals. *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994). A habeas appeal that satisfies one of the criteria set forth in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), is not, however, frivolous and warrants appellate review if the appellant can show: that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . *Simms* v. *Warden*, supra, 616, quoting *Lozada* v. *Deeds*, supra, 432. Thus, if an appeal is not frivolous, the habeas court's failure to grant certification to appeal is an abuse of discretion. *Simms* v. *Warden*, supra, 616. . . . *Copas* v. *Commissioner of Correction*, supra, 150–51. . . . *Graham* v. *Commissioner of Correction*, 39 Conn. App. 473, 476, 664 A.2d 1207, cert. denied, 235 Conn. 930, 667 A.2d 800 (1995).

"The [commissioner] has not sustained his burden of persuasion that the [habeas] court's denial of his certification to appeal was a clear abuse of discretion or that an injustice has been done. *Hinton* v. *Commissioner of Correction*, 43 Conn. App. 549, 551, 684 A.2d 733 (1996), cert. denied, 239 Conn. 958, 688 A.2d 327 (1997). The habeas court and [the Appellate] [C]ourt are bound by the clear language of General Statutes § 18-7, which provides in relevant part: When any pris-

oner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section. . . . It is further clear that this portion of § 18-7 applies to General Statutes [Rev. to 1997] § 18-7a,[8] which provides for

---

[8] General Statutes (Rev. to 1997) § 18-7a provides: "(a) Except as provided in subsections (b) and (c) any person sentenced to a term of imprisonment, on and after October 1, 1976, and while still serving such sentence whether such sentence is for a definite, indefinite or indeterminate term, and regardless of the institution wherein the prisoner is confined may, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a commutation or diminution of his sentence in the amount of ten days for each month, and pro rata for a part of a month, of a sentence which is for not more than five years, and fifteen days for each month, and pro rata for a part of a month, for the sixth and each subsequent year of a sentence of more than five years. In the case of an indeterminate sentence, such credit shall apply to both the minimum and maximum term. In the case of an indefinite sentence, such credit shall apply to the maximum term only. Any act of misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such credit by the commissioner or his designee.

"(b) Except as provided in subsection (c), any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1981, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence in the amount of ten days for each month and pro rata for a part of a month of a sentence up to five years, and twelve days for each month and pro rata for a part of a month for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee.

"(c) Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which

the good time credits for prisoners sentenced after July 1, 1983. *McCarthy* v. *Commissioner of Correction*, 217 Conn. 568, 581, 587 A.2d 116 (1991). The Supreme Court's decisions in *McCarthy* . . . and *Howard* v. *Commissioner of Correction*, supra, 230 Conn. 20–21, as well as [the Appellate] [C]ourt's decision in *Wilson* v. *Warden*, 34 Conn. App. 503, 505, 642 A.2d 724, cert. denied, 230 Conn. 908, 644 A.2d 922 (1994), make it clear that all multiple sentences both concurrent and consecutive, whether imposed at the same time or at different times, must be aggregated for the purpose of calculating good time. [The Appellate Court] agree[s] with the habeas court that the petitioner is not seeking additional presentence confinement credits, and that General Statutes § 18-98d[9] and the case of *Payton* v.

have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee."

The Appellate Court decision in this case was released on February 24, 1998. That court relied on General Statutes (Rev. to 1997) § 18-7a, the relevant revision for purposes of that court's decision in 1998. Section 18-7a (c) was amended by Public Acts 1997, No. 97-169, and, thus, General Statutes (Rev. to 1999) § 18-7a (c) differs from the version found in the 1997 revision. To maintain consistency, all references to § 18-7a are to the 1997 revision. Because, prior to 1997, § 18-7a had not been amended since 1982, the version of § 18-7a found in the 1997 revision contains the language applicable to the petitioner's case.

[9] General Statutes § 18-98d provides: "Presentence confinement credit for confinement resulting from an offense committed on or after July 1, 1981. (a) Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of his sentence equal to the number of days which he spent in such facility from the time he was placed in presentence confinement to the time he began serving the term of imprisonment imposed; provided (1) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (2) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for his presentence confinement, except that if a person is serving a term of imprisonment at the same time he is in presentence confinement on another charge and the conviction for such imprisonment is reversed

*Albert,* 209 Conn. 23, 29–30, 547 A.2d 1 (1988), cited by the [commissioner], deal with the transferability of jail time credit[10] and do not apply to this case.

"We find that none of the three criteria of *Lozada* v. *Deeds,* supra, 498 U.S. 431–32, has been met and, therefore, the [habeas] court did not abuse its discretion in denying the [commissioner] certification to appeal." (Internal quotation marks omitted.) *Rivera v. Commissioner of Correction,* supra, 47 Conn. App. 755–57. Accordingly, the Appellate Court dismissed the commissioner's appeal. Id., 757.

We granted the commissioner's petition for certification to appeal, limited to the following two issues: "(1) Whether the Appellate Court properly concluded that the [habeas] court did not abuse its discretion in denying the [commissioner's] certification to appeal to the Appellate Court?" And "(2) [w]hether the Appellate

on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. In the case of a fine each day spent in such confinement prior to sentencing shall be credited against the sentence at the rate of ten dollars.

"(b) In addition to any reduction allowed under subsection (a), if such person obeys the rules of the facility he may receive a good conduct reduction of any portion of a fine not remitted or sentence not suspended at the rate of ten days or one hundred dollars, as the case may be, for each thirty days of presentence confinement; provided any day spent in presentence confinement by a person who has more than one information pending against him may not be counted more than once in computing a good conduct reduction under this subsection.

"(c) The Commissioner of Correction shall be responsible for ensuring that each person to whom the provisions of this section apply receives the correct reduction in such person's sentence; provided in no event shall credit be allowed under subsection (a) in excess of the sentence actually imposed."

[10] " 'Jail time' is presentence time spent in confinement as the result of an arrest for a crime." *McCarthy* v. *Commissioner of Correction,* supra, 217 Conn. 569 n.2. Under § 18-98d (a), a defendant is entitled to a day-for-day reduction of his sentence equal to the number of days of jail time that he served prior to sentencing. Jail time credit should be distinguished from presentence good time credit, the latter of which is covered by subsection (b) of § 18-98d. See footnotes 2 and 9 of this opinion.

Court properly concluded that [presentence] good time and statutory good time earned on a sentence must be shifted from an earlier sentence and credited to subsequently imposed concurrent sentences?" *Rivera* v. *Commissioner of Correction*, 245 Conn. 901, 719 A.2d 1164 (1998). This appeal followed. Although we conclude that the Appellate Court improperly upheld the habeas court's denial of the commissioner's petition for certification to appeal, we nevertheless agree with the determinations of the Appellate Court and the habeas court that the petitioner is entitled to have his total effective term of imprisonment reduced by the 109 days of presentence and statutory good time credit that he had earned while incarcerated in connection with his original three year sentence.

I

The petitioner is no longer incarcerated, having served his sentences less the 109 days good time credit that the habeas court had ordered the commissioner to award to the petitioner. The petitioner claims that, because he is no longer confined, this case is moot and, therefore, we must dismiss the appeal. Because "[m]ootness implicates the court's subject matter jurisdiction . . . [it] is . . . a threshold matter for us to resolve."[11] *Ayala* v. *Smith*, 236 Conn. 89, 93, 671 A.2d 345 (1996). We disagree that the case is moot.

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the

---

[11] Consequently, we must address the petitioner's mootness claim even though we did not certify that issue.

appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citations omitted; internal quotation marks omitted.) Id., 93–94.

The commissioner asserts that, if he prevails in this appeal, he will seek custody of the petitioner for the period of time that he was required to award the petitioner as good time credit pursuant to the judgment of the habeas court. Although the petitioner questions the authority of the commissioner to have him recommitted under such circumstances, we previously have indicated that such a good faith representation by the commissioner is sufficient to obviate any potential mootness issue. See *Nichols* v. *Warren*, 209 Conn. 191, 195, 550 A.2d 309 (1988); see also *Payton* v. *Albert*, supra, 209 Conn. 26 n.4. Accordingly, we reject the petitioner's mootness claim.

## II

We now turn to the first certified issue, namely, whether the Appellate Court properly concluded that the habeas court did not abuse its discretion in denying the commissioner's petition for certification to appeal pursuant to § 52-470 (b). We disagree with the determination of the Appellate Court that the habeas court properly denied the commissioner's petition for certification to appeal.

"Faced with the habeas court's denial of certification to appeal [under § 52-470 (b)], a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. Abuse of discretion is the proper standard because that is the standard to which we have held other litigants whose rights to appeal the legislature has conditioned upon the obtaining of the trial court's permission." *Simms* v. *Warden*, supra, 230 Conn. 612. "We recognize that [i]n enacting § 52-470 (b),

the legislature intended to discourage frivolous habeas appeals. . . . A habeas appeal that satisfies one of the criteria set forth in *Lozada* v. *Deeds*, [supra, 498 U.S. 431–32], is not, however, frivolous and warrants appellate review if the appellant can show: that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . Thus, if an appeal is not frivolous, the habeas court's failure to grant certification to appeal is an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Copas* v. *Commissioner of Correction*, supra, 234 Conn. 150–51; see also *James L.* v. *Commissioner of Correction*, 245 Conn. 132, 137–38, 712 A.2d 947 (1998) (observing that this court's "recent habeas corpus jurisprudence has construed § 52-470 [b] narrowly").

We are persuaded that the habeas court abused its discretion in denying the commissioner's petition for certification to appeal. Although we ultimately agree with the habeas court that this case is controlled by our holding in *Howard* v. *Commissioner of Correction*, supra, 230 Conn. 17; see part III A of this opinion; the commissioner has raised a colorable claim that the petitioner is not entitled to the nineteen days of presentence good time credit that the habeas court had ordered the commissioner to award to the petitioner. See part III C of this opinion. Specifically, the commissioner had claimed that the habeas court's decision with respect to the petitioner's presentence good time credit is inconsistent with our holding in *Payton* v. *Albert*, supra, 209 Conn. 31–32, in which we concluded that jail time credits[12] earned under § 18-98d (a); see footnote 9 of this opinion; while awaiting sentencing for one offense may not be applied to reduce a second, subsequently imposed prison sentence. In the commis-

---

[12] See footnote 10 of this opinion.

sioner's view, because, under *Payton*, jail time credit cannot be transferred from one sentence to another, any presentence good time credit that the petitioner had earned on one sentence cannot be credited toward his subsequent sentences. This claim is not frivolous. We conclude, therefore, that the Appellate Court improperly concluded that the habeas court did not abuse its discretion in denying the commissioner's petition for certification to appeal.

## III

We next must decide whether the habeas court properly determined that the petitioner is entitled to have good time credit applied toward his total effective term of imprisonment of nine years for the ninety days of statutory good time and nineteen days of presentence good time that he had earned in connection with his original three year sentence. As we previously have explained, both the habeas court and the Appellate Court had determined that the petitioner is entitled to have such good time credit applied toward his total effective sentence under our holding in *Howard* v. *Commissioner of Correction*, supra, 230 Conn. 17. The commissioner challenges that determination, asserting, first, that the petitioner's statutory good time claim is not controlled by *Howard* because this case is factually distinguishable. Second, the commissioner maintains that the "one continuous term" language of § 18-7 is inapplicable to the petitioner's three year sentence because the good time credit calculation for that sentence is governed by § 18-7a (c), which, the commissioner contends, implicitly repealed the one continuous term requirement of § 18-7 for any prison sentence, including the petitioner's sentence, imposed for an offense committed on or after July 1, 1983.[13] The com-

---

[13] The commissioner informs us that he has been calculating and crediting good time in accordance with this interpretation of *Howard*.

missioner alternatively claims that, if we determine that *Howard* cannot be distinguished from this case, we should overrule *Howard*.[14] Finally, with respect to the petitioner's presentence good time claim, the commissioner contends that this case is controlled by *Payton* v. *Albert*, supra, 209 Conn. 23, and not *Howard*, and that, under *Payton*, the petitioner is not entitled to credit for the nineteen days of presentence good time that he had earned on his original three year sentence. We reject these arguments and conclude that the habeas court properly ordered the commissioner to credit the petitioner with the 109 days of good time credit that he had earned in connection with his three year sentence.

A

We first consider the commissioner's claim that this case is factually distinguishable from *Howard* v. *Commissioner of Correction*, supra, 230 Conn. 17. In that case, the petitioner, Gregory Howard, "was sentenced on February 24, 1984, to a term of imprisonment of forty months. Subsequently, on August 15, 1985, he was sentenced to a term of imprisonment of ten years to be served consecutively to his sentence of forty months. Thereafter, on March 18, 1993, he was sentenced to

[14] We note that the commissioner raised this claim explicitly for the first time during oral argument in this court, stating: "If, [in order] to reverse the Appellate Court, it's necessary to overrule *Howard*, then the commissioner would respectfully suggest that this court reexamine *Howard* and perhaps overrule *Howard*." We normally would not entertain a claim that was not raised expressly until that late stage of the proceedings. However, the original and reply briefs filed by the commissioner in this case are critical of *Howard*, and suggest why, in the commissioner's view, our holding in *Howard* is not sound. Indeed, it is for those reasons that the commissioner seeks to have us limit our holding in *Howard* to the facts of that case. Moreover, this case involves an important issue of statutory construction that affects the release dates of a category of inmates who have received multiple sentences for crimes committed between 1983 and 1994. In such circumstances, and absent any express objection by the petitioner, we address the commissioner's claim that *Howard* should be overruled.

a term of imprisonment of nine months to be served concurrently with the sentence he was then serving.

"[Howard's] forty month sentence expired on October 18, 1986. He was discharged from his ten year sentence on July 2, 1993. Thereafter, he was serving only the nine month concurrent sentence imposed on March 18, 1993.

"While [Howard] was serving his forty month sentence, he had forfeited a substantial amount of [statutory] good [time] credit because of misconduct in the institution.[15] . . . While serving his ten year sentence, [Howard] also had forfeited a substantial amount of good [time] credit. His behavior thereafter had improved during that [ten year] sentence, however, and all the forfeited credit attributable to that sentence had been eventually restored to that sentence. The [commissioner], however, refused to consider restoration of good [time] credits forfeited during [Howard's] forty month sentence for application to his subsequent sentences.[16]

"On April 12, 1993, [Howard] brought [a] petition for habeas corpus to require that the [commissioner] consider the good [time] credits forfeited during [Howard's] expired forty month sentence for application to reduce his remaining sentences. The habeas court concluded that the [commissioner] had denied [Howard's] request on grounds not authorized by . . . §§ 18-7 and 18-7a, and ordered the [commissioner] to reconsider the request. The court reasoned that [Howard's] forty month sentence and his subsequent sentences should be construed as one continuous term pursuant to § 18-

[15] Because each of Howard's sentences was for a crime that he had committed after July 1, 1983, the calculation and subsequent forfeiture of his good time credit were governed by § 18-7a (c).

[16] The decision to restore Howard's good time credit was a discretionary determination of the department of correction. *Howard* v. *Commissioner of Correction*, supra, 230 Conn. 19 n.3.

7. It determined, therefore, that [Howard] was entitled to have any good [time] credit forfeited during his forty month sentence considered for restoration to reduce his remaining sentences.

"Pursuant to the habeas court's judgment, the [commissioner] considered [Howard's] request for restoration of good [time] credits and restored to his ten year sentence thirty days of credit that [Howard] had lost while serving his forty month sentence. The [commissioner], however, refused to apply the restored thirty days of credit to [Howard's] nine month sentence. When [Howard] was notified on July 29, 1993, that thirty days of good [time] credit had been restored, [he] already had been discharged from his ten year sentence. Thereafter, [Howard] continued to serve only the unexpired portion of the nine month concurrent term to which he had been sentenced on March 18, 1993. That term was due to be discharged in September, 1993.

"In response to [Howard's] motion requesting enforcement of its judgment, the habeas court ruled that all three sentences in question were required to be treated as one continuous term of imprisonment pursuant to § 18-7. The court therefore ordered that the thirty days of restored good [time] credit be applied to that portion of [Howard's] nine month concurrent sentence that he was still serving.

"The [commissioner] did not appeal the habeas court's decision insofar as it held that [Howard] was entitled to have his forty month sentence and his consecutive ten year sentence aggregated and construed as one continuous term of imprisonment. Moreover, [the commissioner did] not disagree with the habeas court's ruling that the good [time] credits forfeited by [Howard] while serving his forty month sentence properly should have been considered for application to reduce [Howard's] consecutive ten year sentence, even

though [Howard's] forty month term had expired. The [commissioner] concede[d] that these aspects of the habeas court's ruling were reasonable interpretations of *McCarthy* v. *Commissioner of Correction*, [supra, 217 Conn. 574] (statutory mandate of § 18-7 that consecutive terms of imprisonment be aggregated and treated as one consecutive term of imprisonment for purpose of calculating good time credits). . . .

"The [commissioner], however, appeal[ed] from that part of the habeas court's judgment that determined that [Howard's] nine month concurrent sentence was part of a continuous term of imprisonment and that the restoration of thirty days of good [time] credit from [Howard's] expired forty month sentence had to be applied to his nine month sentence. The [commissioner] did not seek a stay of execution, however, and the restored good [time] credits were applied to the nine month sentence that [Howard] was then serving. [Howard] was released from custody on August 30, 1993." (Citations omitted; internal quotation marks omitted.) *Howard* v. *Commissioner of Correction*, supra, 230 Conn. 18–21.

In *Howard*, this court unanimously held that all of Howard's sentences, whether consecutive or concurrent and regardless of when they had been imposed, must be treated as one continuous term for purposes of applying statutory good time credit that he had earned under § 18-7a (c). Id., 23. We concluded that "the petitioner was entitled to have the thirty days of restored good [time] credits applied to his overall sentence, that is, the sentence with the longest term to run, [namely, Howard's] nine month concurrent sentence. [T]he legislature explicitly chose to make the effective sentence the benchmark for good time under § 18-7 . . . .

"Moreover, the fact that [Howard's] forty month sentence had expired prior to the time [that Howard] was

held pursuant to his nine month sentence does not defeat [his] claim that he was entitled to the restored good [time] credits attributable to that sentence. Concededly, [Howard's] forty month sentence was required to be treated as one continuous term with his subsequent ten year sentence. See *McCarthy* v. *Commissioner of Correction,* supra, 217 Conn. 568. His forfeited good [time] credits from that sentence were, therefore, applicable to his ten year sentence. Because the nine month concurrent sentence must be construed as one continuous term with his ten year sentence, those credits were also available for application to his nine month sentence." (Citation omitted; internal quotation marks omitted.) *Howard* v. *Commissioner of Correction,* supra, 230 Conn. 23–24.

The commissioner claims that *Howard* does not control our resolution of the petitioner's claim because, unlike this case, *Howard* involved the restoration of forfeited good time credit. Indeed, the commissioner asserts that the holding of *Howard* should be limited to those specific facts. The commissioner, however, has provided no principled basis upon which to distinguish this case from *Howard.* Simply put, there is nothing in the relevant statutory scheme or in our case law to suggest that the calculation and application of restored good time credit differ in any way from the calculation and application of good time credit that never was forfeited. In this case, the petitioner has requested that the good time credits he had earned on an earlier sentence be credited toward a controlling, subsequently imposed concurrent sentence.[17] That is precisely what we concluded the commissioner was required to do in *Howard,* in which we rejected the commissioner's claim that the one continuous term language of § 18-7 applies

[17] In referring to a "controlling" sentence, we mean the sentence with the longest term to run.

only to consecutive sentences.[18] See generally id., 21–24. In fact, a review of the record in *Howard* reveals that, in that case, the commissioner drew no distinction between the calculation of restored good time credit and the calculation of good time credit that never had been forfeited. We decline the commissioner's belated invitation to do so now.

It is noteworthy, moreover, that the distinction that the commissioner urges us to draw between this case and *Howard* would lead to bizarre and incongruous results. Under the view advanced by the commissioner, only a prisoner who, like Howard, has forfeited good time based on misconduct could have that good time, if restored, credited to a subsequent, controlling sentence. We see no conceivable reason why an inmate who, by virtue of his good conduct, has *not* forfeited any good time, should be deprived of credit for the

---

[18] In his reply brief, the commissioner argues that our holding in *Howard* is limited to a determination of the scope of the commissioner's discretionary authority to restore good time credit. In support of this contention, the commissioner states: "Although the commissioner was aware that he had the broad discretion to restore credits to a sentence, no court prior to *Howard* had held that the commissioner's discretion was so broad, as to allow him to restore credits from one aggregated sentence, to a separate and distinct concurrent sentence. This court's holding in *Howard* was a remarkable grant of broad and unfettered discretion, which this court afforded the commissioner solely with regard to restoration." After explaining that the commissioner's "authority and discretion to restore good time [credit] is no different than the discretion afforded the Connecticut board of pardons," the commissioner states: "In *Howard*, this court expressly recognized the commissioner's authority to restore all, or a portion of, a prisoner's good time, even though . . . § 18-7a (c) and the other good time statutes do not expressly authorize restoration. The commissioner, under this court's holding in *Howard*, has remarkably broad and unfettered discretion with regard to restorations." *Howard*, however, did not involve the commissioner's discretionary authority to restore good time credit because that authority was never at issue in *Howard*. Rather, in *Howard*, we expressly held that the one continuous term language of § 18-7 applies to concurrent sentences. *Howard* v. *Commissioner of Correction*, supra, 230 Conn. 24; see footnote 28 of this opinion. Therefore, the commissioner's attempt to limit our holding in *Howard* is wholly unpersuasive.

good time that he earns on his earlier sentence, while Howard, whose misconduct resulted in the *forfeiture* of good time, is entitled to credit toward a subsequent, controlling sentence for that good time simply because that good time had been forfeited and restored.

The following hypothetical graphically illustrates this point. Inmate $X$ and inmate $Y$ both are convicted of the same crime and both receive a sentence of five years imprisonment. Inmate $X$ behaves poorly and forfeits his good time, while inmate $Y$ accrues approximately one year of good time by the end of the third year of his sentence. After having been incarcerated for three years on their original five year sentences, inmate $X$ and inmate $Y$ are both sentenced to a concurrent, four year term of imprisonment stemming from their possession of marijuana in the correctional facility. Inmate $X$ and inmate $Y$ are model prisoners for the remainder of their prison terms, and each is awarded good time credit at the maximum rate authorized by § 18-7a (c). Because of inmate $X$'s good conduct, however, the commissioner restores the good time that inmate $X$ had forfeited in connection with his original five year sentence. Under our holding in *Howard*, inmate $X$ would be entitled to apply that restored good time credit to his total effective term of imprisonment. If, as the commissioner contends, *Howard* is limited to its facts, however, then inmate $Y$ would *not* receive credit toward *his* total effective term of imprisonment for the good time that he had earned on his earlier five year sentence. Such a result is neither fair nor rational.

For the foregoing reasons, we conclude that *Howard* is directly on point and, unless overruled, is controlling with respect to the petitioner's statutory good time claim. We turn next, therefore, to the commissioner's contention that we should reconsider *Howard*.

## B

Our resolution of the commissioner's claim that *How-ard* should be overruled requires an examination of the relevant statutory language and our pre-*Howard* precedent construing that language. An appropriate starting point is General Statutes § 18-7, which provides in relevant part: "Any prisoner sentenced to a term of imprisonment prior to October 1, 1976, may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence . . . . When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section. . . ."

Although § 18-7 makes express reference only to prison sentences imposed prior to October 1, 1976, we previously have concluded that the one continuous term language of § 18-7 also applies to good time credit earned under the provisions of § 18-7a, for sentences imposed on or after October 1, 1976.[19] Specifically, in *McCarthy* v. *Commissioner of Correction*, supra, 217 Conn. 579, 581, we held that the one continuous term language of § 18-7 applies to consecutive sentences governed by § 18-7a (a),[20] which pertains to the calculation

[19] Subsection (a) of § 18-7a applies to prison sentences imposed on or after October 1, 1976, except as provided in subsections (b) and (c) of § 18-7a. Subsection (b) applies to prison sentences imposed for crimes committed between July 1, 1981, and June 30, 1983, inclusive, and subsection (c) applies to prison sentences imposed for crimes committed between July 1, 1983, and September 30, 1994, inclusive. See generally General Statutes (Rev. to 1997) § 18-7a; see also *Velez* v. *Commissioner of Correction*, 250 Conn. 536, 552, 738 A.2d 604 (1999) (good time credit statutes inapplicable to sentences for crimes committed on or after October 1, 1994).

[20] *McCarthy* involved an inmate who already had served five years of his total effective term of imprisonment and, therefore, under the terms of § 18-7a (a), was seeking good time credit to accrue at the enhanced rate of fifteen days per month for the duration of his sentence. See *McCarthy* v. *Commissioner of Correction*, supra, 217 Conn. 571–72.

of good time credit for certain sentences imposed on or after October 1, 1976. As we explained in *McCarthy*, the provisions of § 18-7 "relate generally to the duties and prerogatives of the . . . commissioner . . . in relation to the inmates"; id., 575; and "[t]here is nothing in the legislative history of [§ 18-7a (a)] to indicate that the legislature intended to abrogate the aggregation of consecutive sentences for the purpose of calculating a prisoner's good time." Id., 576; see also *Elliott* v. *Commissioner of Correction*, 217 Conn. 584, 587, 587 A.2d 124 (1991) (reaffirming *McCarthy* and suggesting that one continuous term language of § 18-7 applies to other subsections of § 18-7a).[21]

Three years later, in *Howard* v. *Commissioner of Correction*, supra, 230 Conn. 17, we upheld the habeas court's decision applying the one continuous term language of § 18-7 to § 18-7a (c); see id., 20–21; and also concluded that, because § 18-7 does not distinguish between convictions that result in consecutive sentences and convictions that result in concurrent sentences; id., 22; an inmate is entitled to have multiple sentences treated as one continuous term for good time calculation purposes whether those sentences are imposed to run consecutively or concurrently.[22] Id.

The commissioner does not dispute that the one continuous term language of § 18-7 applies to § 18-7a (a) and (b). The commissioner claims, however, that the one continuous term requirement of § 18-7 should not apply to § 18-7a (c). Specifically, the commissioner contends that the method mandated by the legislature for

[21] *Elliott* also involved an inmate who was seeking good time credit at the enhanced rate. See footnote 20 of this opinion.

[22] Notably, in an opinion decided approximately one month prior to our decision in *Howard*, the Appellate Court also held that, for good time credits governed by § 18-7a, the one continuous term language of § 18-7 applies not only to consecutive sentences, but to concurrent sentences as well. *Wilson* v. *Warden*, supra, 34 Conn. App. 506–507.

calculating good time under § 18-7a (c), which differs
from the method pursuant to which such credit is calcu-
lated under subsections (a) and (b), suggests that the
legislature intended to eliminate the one continuous
term requirement of § 18-7 for purposes of good time
calculations under § 18-7a (c). We disagree with the
statutory interpretation advanced by the commis-
sioner.[23]

Under subsections (a) and (b) of § 18-7a, "for pur-
poses of administrative efficiency statutory good time
was calculated *and credited* at the outset of a prisoner's
sentence on the basis of the sentence imposed by the
sentencing court. . . . This method of awarding good
time is commonly referred to as posting."[24] (Citation

[23] The general principles governing our analysis of the commissioner's
claim are well established. "Statutory construction is a question of law and
therefore our review is plenary. . . . [O]ur fundamental objective is to
ascertain and give effect to the apparent intent of the legislature. . . . In
seeking to discern that intent, we look to the words of the statute itself, to
the legislative history and circumstances surrounding its enactment, to the
legislative policy it was designed to implement, and to its relationship to
existing legislation and common law principles governing the same general
subject matter." (Citation omitted; internal quotation marks omitted.) *Rivera*
v. *Double A Transportation, Inc.*, 248 Conn. 21, 25, 727 A.2d 204 (1999).

[24] "For example, when a prisoner sentenced to seven years imprisonment
for an offense committed prior to July 1, 1983, was committed to the custody
of the [commissioner], his statutory good time was calculated as follows:
for the first sixty months he received ten days per month for a total of 600
days; for the remaining twenty-four months he received twelve days per
month for a total of 288 days. Thus, a total of 888 days of statutory good
time was credited to his sentence. If the prisoner thereafter exhibited good
conduct and obedience to the rules, he was released from custody after
54.4 months of confinement. . . .

"Consequently, although the prisoner had been confined for less than five
years, because the sentence imposed immediately determined the time at
which the enhanced rate of statutory good time began, he had received
statutory good time at the rate of twelve days per month for a portion of
his sentence. Essentially, the enhanced rate of statutory good time had
commenced when his confinement time, approximately forty months, and
statutory good time, twenty months, totaled five years." (Citation omitted.)
*Seno* v. *Commissioner of Correction*, 219 Conn. 269, 275–76, 593 A.2d
111 (1991).

omitted; emphasis added; internal quotation marks omitted.) *Seno* v. *Commissioner of Correction,* 219 Conn. 269, 275, 593 A.2d 111 (1991); see also *Chung* v. *Commissioner of Correction,* 245 Conn. 423, 427, 717 A.2d 111 (1998). "Because, under the posting system, good time is credited at the outset of a sentence, some prisoners receive good time for time that they, in fact, never serve." *Seno* v. *Commissioner of Correction,* supra, 278.

In 1982, the legislature amended § 18-7a by adding subsection (c); see Public Acts 1982, No. 82-379, § 1; which governs the calculation of good time credit for sentences imposed for offenses committed on or after July 1, 1983. The purpose of that statutory amendment was to abolish the posting system for prisoners whose good time calculations are governed by § 18-7a (c), thereby eliminating the possibility that any of those prisoners would be credited with good time that they never earn. *Seno* v. *Commissioner of Correction,* supra, 219 Conn. 278. The legislature accomplished this goal by expressly providing that any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may earn a reduction of his or her sentence only "as such sentence is served . . . ." General Statutes (Rev. to 1997) § 18-7a (c).

The commissioner claims that this amendment is inconsistent with the relevant language of General Statutes § 18-7, which provides in relevant part: "When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder *shall be construed as one continuous term for the purpose of estimating the amount of commutation* which he may earn under the provisions of this section. . . ." (Emphasis added.) In particular, the commissioner claims that, under subsection (c) of § 18-7a, good time credit no longer is *estimated* as it is pursuant to the posting system utilized to calculate good time credit

under subsections (a) and (b) of § 18-7a and that, consequently, the one continuous term language of § 18-7 is not applicable to § 18-7a (c). We are not persuaded by this argument.

*Estimating* good time credit is no more or less a part of the posting system employed by the commissioner under § 18-7a (a) and (b) than it is for purposes of determining such credit under § 18-7a (c). Rather, the use of the term "estimating" in § 18-7 merely reflects the reality that an inmate may forfeit some of the good time credit that he or she otherwise would be expected to accrue under the applicable subsection of § 18-7a. Of course, the forfeiture of good time credit can occur regardless of which subsection of § 18-7a happens to apply in any given case. In fact, the petitioner in this case had forfeited good time credit on several occasions,[25] thereby causing his estimated release date to change.

Moreover, the commissioner's contention finds no support in the legislative history of § 18-7a (c), which we previously examined in detail in *Seno* v. *Commissioner of Correction*, supra, 219 Conn. 269: "The legislative history of [that statutory subsection] demonstrates that [it] was designed to attain two related objectives. First, the legislature sought to return to the original concept behind good time, that is, the concept of reward for good behavior. Senator Nancy L. Johnson defined this objective, stating: 'All this bill really does is to return the initial concept of good time which was a concept of reward. A reward for good behavior. When you deduct the entire amount at the front end of the sentence, then what you revert to is the system of punishment for poor behavior. So that instead of granting good time you actually end up earning penalties for poor behavior. . . . All it means is that the reward will

---

[25] There is nothing in the record to indicate that the petitioner's forfeited good time credit ever was restored by the commissioner.

not be front-ended. The reward must be earned and, indeed, good time will reduce the sentence . . . . The importance of this [amendment] is that it returns to the original sound concept of good time which is a concept of reward for good behavior rather than a concept of punishment for failure to provide good behavior.' 25 S. Proc., Pt. 12, 1982 Sess., pp. 3826–27.

"The legislature's second objective was to eradicate an irrational consequence of the posting system. Because, under the posting system, good time is credited at the outset of a sentence, some prisoners receive good time for time that they, in fact, never serve. As Representative Christopher Shays explained: 'We compute good time [under § 18-7a (a)] saying the person is going to serve the whole [ten] years, so he earns [five] years based on [ten] days a month and then he has [five] years based on [fifteen] days a month, assuming that he is in jail for the whole ten years . . . . And so what you end up with is a sentence where an individual gets out before he even serves the full sentence earning the good time.' 25 H.R. Proc., Pt. 11, 1982 Sess., p. 3551. For example, pursuant to the posting method, a prisoner sentenced to a term of seven years imprisonment is awarded good time for eighty-four months of service. If the prisoner exhibits good conduct and obedience and, therefore, retains the good time, he will serve 54.4 months. . . . Consequently, the prisoner receives good time for 29.6 months of time that he never serves." (Citation omitted.) *Seno* v. *Commissioner of Correction*, supra, 219 Conn. 277–78. There is nothing in the relevant legislative history to suggest that § 18-7a (c) was intended to accomplish anything more than ensuring that, for any sentence imposed for an offense committed on or after July 1, 1983, an inmate will not receive good time credit for time he has not served. The legislature achieved this objective by eliminating the posting method in such cases.

Furthermore, "it is a well established rule of statutory construction that repeal of the provisions of a statute by implication is not favored and will not be presumed where the old and the new statutes, in this case §§ 18-7 and [18-7a (c)], can peacefully coexist. . . . If, by any fair interpretation, we can find a reasonable field of operation for both § 18-7 and [§ 18-7a (c)], without destroying or perverting their meaning and intent, it is our duty to reconcile them and give them concurrent effect. . . . We also note that the provision of § 18-7 requiring the aggregation of multiple sentences has been a part of the general statutes governing the award of good time since 1902. . . . In the interpretation of a statute, a radical departure from an established policy cannot be implied. It must be expressed in unequivocal language. . . . If the legislature had intended by enacting [§ 18-7a (c)] to do away with the longstanding policy of aggregation of multiple sentences, it could easily have said so. . . .[26] Furthermore, there is a presumption that an amendatory act does not change the existing law further than is expressly declared or necessarily implied."[27] (Citations omitted; internal quotation

---

[26] We note, for example, that the legislature amended § 18-7 in 1997 to include a provision relating to hospitalized prisoners. Public Acts 1997, No. 97-245, § 2; see footnote 6 of this opinion. Although this amendment bears no substantive relationship to our analysis of the commissioner's claim, it does serve to underscore the fact that the legislature easily could have done expressly what the commissioner contends it did by implication.

[27] The commissioner makes the following representation in his reply brief: "The commissioner's position is that for the purposes of estimating whether the ten days per month or enhanced rate of twelve days per month applies . . . *§ 18-7 requires the petitioner's concurrent and consecutive sentences to be construed as one continuous term of confinement. . . . The [commissioner] has done so in this case.*" (Citation omitted; emphasis added.) In other words, the commissioner does not dispute that he is required to apply the one continuous term language of § 18-7 for purposes of calculating good time credit earned by any inmate for the prison time that he or she has served *in excess of five years*, including inmates who, like the petitioner, were sentenced to concurrent prison terms for crimes committed on or after July 1, 1983. In light of this acknowledgement, we are unable to discern any logical basis for the commissioner's conclusion that the one continuous term requirement of § 18-7 is applicable to § 18-7a (c) *for that limited*

marks omitted.) *McCarthy* v. *Commissioner of Correction*, supra, 217 Conn. 578. Because §§ 18-7 and 18-7a (c) are not inconsistent with each other, we will not presume that § 18-7a (c) abrogates the one continuous term requirement of § 18-7 in the absence of a convincing showing to the contrary. The commissioner has failed to make such a showing.

Finally, it bears mention that, in *Howard*, the commissioner did not claim that § 18-7a (c) implicitly repealed the one continuous term language of § 18-7 for prison sentences imposed for offenses committed on or after July 1, 1983. See generally *Howard* v. *Commissioner of Correction*, supra, 230 Conn. 20–21. Rather, the commissioner argued in *Howard* that the one continuous term requirement of § 18-7 applies only to consecutive sentences; see *McCarthy* v. *Commissioner of Correction*, supra, 217 Conn. 580–81; *Elliott* v. *Commissioner*, supra, 217 Conn. 587; and not to concurrent sentences; see *Howard* v. *Commissioner of Correction*, supra, 21; a contention that we squarely rejected in *Howard*.[28] Id., 24. Had the commissioner successfully claimed in *Howard* what he claims in this case, namely, that the one continuous term language of § 18-7 is inapplicable

*purpose only*, and not for the purpose of applying good time credit earned by such inmates for the time that they have served during the *first five years* of their overall term. We are aware of nothing in the language of § 18-7, § 18-7a or any other statutory provision that either expressly or implicitly supports the commissioner's interpretation.

[28] As we stated in *Howard*, § 18-7 "makes no distinction between convictions that result in consecutive sentences and those that result in concurrent sentences. . . . We cannot rewrite the statute to make such a distinction. . . . If the legislature had intended § 18-7 to apply only to consecutive sentences, it could easily have said so. . . . The fact, therefore, that [Howard's] sentence was concurrent rather than consecutive does not remove it from the purview of § 18-7." (Citations omitted.) *Howard* v. *Commissioner of Correction*, supra, 230 Conn. 22. As we previously have noted, moreover; see footnote 22 of this opinion; in *Wilson* v. *Warden*, supra, 34 Conn. App. 506–507, a unanimous panel of the Appellate Court came to the same conclusion shortly before we decided *Howard*.

to § 18-7a (c), we would have decided *Howard* in his favor. It is curious that the commissioner never raised such a claim in *Howard*.

The commissioner asserts that *Payton* v. *Albert*, supra, 209 Conn. 23, a case involving the computation of jail time credit under § 18-98d (a);[29] id., 24–25; provides compelling authority to support the commissioner's contention that the petitioner is not entitled to good time credit under § 18-7a (c) for the time that he had served on his three year sentence. In essence, the commissioner claims that *Payton* requires us to overrule *Howard*. We are not persuaded.

*Payton* involved the following factual scenario. On July 22, 1986, Grover Payton was arrested on various charges, including robbery. Id., 27. He remained in pretrial confinement on these charges for 113 days, until November 12, 1986, when he posted bail. Id. On January 16, 1987, Payton pleaded guilty to third degree robbery and was sentenced to a term of imprisonment of two and one-half years. Id. On August 28, 1986, Payton was charged with possession of cocaine.[30] Id. He remained in pretrial custody on this charge until posting bail seventy-six days later, on November 12, 1986. Id. Payton pleaded guilty to the cocaine possession charge and, on January 16, 1987, was sentenced to a second term of imprisonment of two and one-half years. Id. The sentencing court ordered that Payton's robbery and cocaine possession sentences were to run concurrently. Id.

"In determining [Payton's] effective release date, the [commissioner] examined the pretrial confinement time in each case. [With respect to the sentence for Payton's robbery conviction, the commissioner] calculated that

---

[29] See footnotes 9 and 10 of this opinion.

[30] This charge stemmed from conduct that allegedly had occurred on June 11, 1986. *Payton* v. *Albert*, supra, 209 Conn. 27.

113 days of jail time plus a corresponding reduction of thirty-eight days for [presentence good time] advanced [Payton's] release date in that case from July 15, 1989, to February 14, 1989. [With respect to the sentence for Payton's cocaine possession conviction, the commissioner] calculated that seventy-six days of jail time plus a corresponding twenty-six days of [presentence] good time advanced the release date from July 15, 1989, to April 4, 1989. Having merged the two sentences and on the basis of the sentence which had the longest to run, the [commissioner], pursuant to [General Statutes] § 53a-38 (b),[31] determined that the actual release date would be April 4, 1989.

"[Payton] argue[d] that he should receive jail time credit for all presentence confinement regardless of which offense caused his pretrial confinement and regardless of which sentence caused his subsequent imprisonment. In effect, he [sought] to credit the 113 days of jail time accrued in [connection with the robbery conviction] to the sentence imposed in [connection with the cocaine possession conviction]." *Payton* v. *Albert*, supra, 209 Conn. 27–28.

We rejected Payton's claim, concluding that neither the language nor the legislative history of § 18-98d supported Payton's contention that the legislature had "intended to authorize the transfer of jail time credits accrued while in pretrial confinement under one offense to the sentence thereafter imposed upon conviction for another offense." Id., 31–32. We further explained:

---

[31] General Statutes § 53a-38 (b) provides: "A definite sentence of imprisonment commences when the prisoner is received in the custody to which he was sentenced. Where a person is under more than one definite sentence, the sentences shall be calculated as follows: (1) If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run; (2) if the sentences run consecutively, the terms are added to arrive at an aggregate term and are satisfied by discharge of such aggregate term."

"While § 18-98d deals with the calculation of sentences in general, it does not specifically take up the matter of concurrent sentences. [Section] 53a-38 (b) does. It provides in relevant part: 'If the sentences run concurrently, the terms merge in and are *satisfied by discharge of the term which has the longest term to run . . . .*' [General Statutes § 53a-38 (b)].

"In [*Payton*], the [commissioner] determined that the two and one-half year term imposed in [connection with Payton's robbery conviction], when adjusted for its authorized credits, would be satisfied on February 14, 1989. The two and one-half year term imposed in [connection with Payton's cocaine possession conviction], when adjusted for its authorized credits, would be satisfied on April 4, 1989. The two sentences having been ordered to run concurrently, § 53a-38 (b) directed that their merged terms were satisfied by the 'discharge of the term which has the longest term to run.' In this instance, the [commissioner] determined that the longer term was the sentence [for the cocaine possession conviction], i.e., until April 4, 1989, and therefore he declared that date as the proposed discharge date since § 53a-38 (b) required him to do so. [The court] conclude[s] that the determination of the discharge date by this method reflects a correct construction of the two applicable statutes." (Emphasis in original.) *Payton* v. *Albert*, supra, 209 Conn. 32. Finally, we rejected Payton's equal protection challenge to our construction of §§ 18-98d and 53a-38 (b), concluding that the refusal to credit Payton with the jail time credit that he had earned while awaiting sentencing on the robbery charges was justified by the state's compelling interest in prohibiting an inmate from " 'bank[ing]' jail time credits"; id., 33; to reduce a subsequently imposed sentence.[32]

---

[32] As we stated in *Payton*, "[a] petitioner should not, upon posting bail, leave a correctional center with the perception that there is jail time accrued in his name which may be applied to subsequent sentences that may follow criminal activity occurring after his release on bail but before the disposition of the original charges." *Payton* v. *Albert*, supra, 209 Conn. 33–34.

The commissioner claims that, to the extent that *Howard* permits the banking of good time credits by authorizing the transfer of those credits from one sentence to another subsequently imposed sentence, our holding therein is incompatible with *Payton*, in which we concluded that jail time credit cannot be transferred from one sentence to another. Contrary to the commissioner's claim, *Payton* is distinguishable from *Howard* because, in the former case, we considered the application of jail time credit, whereas in the latter, we addressed the issue of statutory good time credit. Each of the two cases, therefore, implicates entirely different statutes: *Payton* required us to interpret §§ 18-98d and 53a-38 (b), whereas *Howard* involved the construction of §§ 18-7 and 18-7a (c). Thus, in each case, our interpretation depended on different statutory language, legislative history and prior case law. Indeed, the dissimilarity of the two cases is underscored by the fact that the brief filed by the commissioner in *Howard* bears no mention of *Payton*, notwithstanding the fact that we had decided *Payton* nearly five years prior to the commissioner's submission of briefs in *Howard*.

Furthermore, the commissioner's reliance on *Payton* is premised on a fundamental misunderstanding of the different purposes underlying jail time credit and statutory good time credit. "[T]he purpose of the jail time statutes is to give recognition to the period of presentence time served and to permit the prisoner, in effect, to commence serving his sentence from the time he was compelled to remain in custody due to a mittimus . . . or because of the court's refusal to allow bail or the defendant's inability to raise bail . . . .

"In contradistinction to jail time, good time is a commutation of a sentence, affecting an inmate's parole and discharge dates, thereby serving an important rehabilitative function by allowing an inmate . . . to earn an earlier release for himself." (Internal quotation

marks omitted.) *Holmquist* v. *Manson*, 168 Conn. 389, 393–94, 362 A.2d 971 (1975). Thus, the fact that jail time credit cannot be applied from one sentence to a second, concurrent sentence is not determinative of whether statutory good time credits may be so applied; indeed, it may be argued that a prohibition against the application of earned good time credit to a subsequent, concurrent sentence would undermine the rehabilitative goal that good time credit was intended to achieve.[33]

The commissioner also claims that because *Howard* permits an inmate to apply good time credits earned on one sentence to a subsequent, concurrent sentence, it can lead to a bizarre result: in some circumstances, the application of such credit may substantially reduce, or even offset entirely,[34] the time that an inmate otherwise would have been required to serve on a subsequent, concurrent sentence.[35] To a significant degree,

[33] The commissioner also contends that his statutory interpretation is supported by *Nichols* v. *Warren*, supra, 209 Conn. 204, in which we concluded that the plain language of § 18-7a (c) does not permit the forfeiture of unearned good time credit . Because *Nichols* had nothing to do with the applicability of the one continuous term language of § 18-7 to § 18-7a (c), it does not buttress the commissioner's claim.

[34] Of course, a subsequent, concurrent sentence that is *controlling*—the sentence with the longest term to run—never will be offset entirely by good time earned in connection with a previous sentence. This is so because an inmate who had earned sufficient good time credit on the original sentence to vitiate a subsequent, controlling concurrent sentence necessarily would have accumulated enough good time on that original sentence to have secured his or her release prior to the imposition of the subsequent sentence.

[35] This possibility is demonstrated by the following example. Inmate *A* receives a ten year prison sentence for an offense committed after July 1, 1983, and prior to October 1, 1994. Because inmate *A* earns good time under § 18-7a (c) at a rate of ten days per month for the first five years of his sentence and twelve days per month for time served thereafter, he is due to be released in approximately 7.4 years, assuming, of course, that he does not forfeit any good time. At the beginning of the seventh year of his sentence, however, inmate *A* is sentenced to a three year, concurrent term of imprisonment stemming from an escape attempt. Because, under *Howard*, inmate *A*'s sentence is treated as one continuous term for purposes of applying good time credit—inmate *A*'s earned good time is applied toward his total effective term of imprisonment of ten years—inmate *A* will not serve any

however, this result[36] is merely a consequence of the fact that concurrent sentences, in contrast to consecutive sentences, "merge in and are satisfied by discharge of the term which has the longest term to run . . . ." General Statutes § 53a-38 (b).[37] Moreover, if the sentencing court wishes to avoid the result that the commissioner characterizes as untenable, the court easily may do so by imposing consecutive terms of imprisonment rather than concurrent terms. Alternatively, the court, prior to sentencing, may ascertain how much good time the defendant has earned on any prior sentence or sentences, thereby enabling the court to determine with

additional time in connection with his subsequent, three year concurrent sentence. Consequently, he will be released about four months after the imposition of that sentence. The commissioner contends that the legislature could not have intended such a result.

Under the statutory interpretation urged by the commissioner, a view that would require us to overrule *Howard*, this result would be avoided. Specifically, if the one continuous term language of § 18-7 were applicable only to consecutive sentences, then the good time credits that inmate *A* earned on his original ten year sentence are applicable only to that sentence, and not to his total effective term of imprisonment. Thus, although inmate *A* would be eligible for release from his ten year sentence approximately four months after the imposition of the subsequent, concurrent three year sentence, that is, after he has served about 7.4 years of his ten year sentence, inmate *A* would be required to serve approximately an additional two years in connection with his three year sentence, assuming that he does not forfeit the good time credit that he is eligible to earn on that sentence.

The commissioner also suggests that *Howard* can result in disparate treatment for similarly situated defendants. For example, inmate *B* has just commenced a one year term of imprisonment when he and the aforementioned inmate *A* attempt to escape. Inmate *B* is arrested, immediately pleads guilty to attempted escape and, like inmate *A*, is sentenced to a concurrent, three year term of imprisonment. Because inmate *B* has earned virtually no good time credit on his original one year sentence and, therefore, has little or no good time credit to be applied against his three year sentence, he will serve approximately 2.3 additional years in prison. In contrast, inmate *A*, who has received the same concurrent sentence as inmate *B* for his attempted escape with inmate *B*, will serve no additional time for that offense.

[36] We note, however, that neither this case nor *Howard* gives rise to such a result.

[37] See footnote 31 of this opinion.

precision how much concurrent prison time must be imposed to accomplish the court's sentencing objectives.[38] See *Frazier* v. *Manson*, 703 F.2d 30, 35 (2d Cir. 1983) (sentencing judges "frequently [take] into account existing systems of computing good time"). We, therefore, do not believe that our conclusion in *Howard* regarding the applicability of § 18-7 to § 18-7a (c) leads to bizarre or absurd consequences. Thus, although in some instances, there may be incongruous results, those results are not inevitable, and may be avoided by a discerning sentencing court.

In fact, as the Appellate Court has observed, it is the *commissioner's* "interpretation of § 18-7 [that] would yield bizarre results. For example, a five year sentence followed by a five year concurrent sentence imposed on the last day of the prior term would result in an inmate's serving ten years in jail without receiving enhanced good time credit. Conversely, the same inmate sentenced to two, five year consecutive sentences would receive enhanced good time credit." *Wilson* v. *Warden*, supra, 34 Conn. App. 509. As we previously have noted; see footnote 27 of this opinion; the commissioner has sought to avoid this incongruous result by awarding enhanced good time credit to any inmate who has completed five years of his or her overall term, *regardless of whether the inmate is serving concurrent or consecutive sentences*. The commissioner, however, has pointed to no authority, and we are aware of none,

---

[38] Because the issue raised by this appeal involves the imposition of a concurrent sentence on an inmate who already is serving time for another offense, in some such cases, the subsequent, concurrent sentence will stem from an offense committed by that inmate while he is incarcerated in connection with his earlier sentence. In such circumstances, the commissioner has the discretion to forfeit any good time that the inmate has earned. When that occurs, the inmate will have no good time to be credited toward his subsequent sentence, unless, of course, the commissioner restores the credit that had been forfeited. Consequently, the issue that we address today will not arise.

to substantiate his conclusory assertion that the one continuous term language of § 18-7 is partially, but not entirely, applicable to § 18-7a.[39] Consequently, we can discern no principled justification for the manner in which the commissioner has chosen to address the unfairness occasioned by his interpretation of the pertinent statutory provisions.

Finally, "[t]he doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of decisionmaking consistency in our legal culture and it is an obvious manifestation of the notion that decisionmaking consistency itself has normative value." (Citations omitted; internal quotation marks omitted.) *George* v. *Ericson*, 250 Conn. 312, 318, 736 A.2d 889 (1999). Moreover, we are mindful that, "[i]n assessing the force of stare decisis, our case law has emphasized that we should be especially cautious about overturning a case that concerns statutory construction." (Internal quotation marks omitted.) *Ferrigno* v. *Cromwell Development Associates*, 244 Conn. 189, 202, 708 A.2d 1371 (1998).

---

[39] We note that the commissioner has not always taken this position. For example, in *Wilson* v. *Warden*, supra, 34 Conn. App. 505–506, the commissioner had maintained that the petitioner, Joseph Wilson, was not entitled to enhanced good time credit on a subsequent, concurrent sentence even though Wilson had completed five years on his earlier sentence. The Appellate Court rejected the commissioner's claim and affirmed the judgment of the habeas court, in which the habeas court ordered the commissioner to award Wilson good time credit at the enhanced rate beginning on the five year anniversary of his first sentence and continuing until the expiration of his overall term of incarceration. See id., 509–10.

*Howard* was decided approximately six years ago. Although our holding in that case was clear,[40] the legislature has failed to take any steps to amend either § 18-7 or § 18-7a in response to *Howard*. "While we are aware that legislative inaction is not necessarily legislative affirmation; see *Conway* v. *Wilton*, 238 Conn. 653, 662, 680 A.2d 242 (1996); we also presume that the legislature is aware of [this court's] interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation." (Internal quotation marks omitted.) *State* v. *Hodge*, 248 Conn. 207, 262–63, 726 A.2d 531, cert. denied, 528 U.S. 969, 120 S. Ct. 409, 145 L. Ed. 2d 319 (1999). "Time and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute. . . . Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision." (Internal quotation marks omitted.) *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 297, 695 A.2d 1051 (1997). Moreover, in the intervening years since *Howard*, the legislature has amended § 18-7 without addressing our construction thereof; see footnote 26 of this opinion; further suggesting legislative approval of our interpretation. See, e.g., *Bocchino* v. *Nationwide Mutual Fire Ins. Co.*, 246 Conn. 378, 388, 716 A.2d 883 (1998).

We conclude, therefore, that the commissioner has provided no compelling reason to overrule *Howard* v. *Commissioner of Correction*, supra, 230 Conn. 17.

---

[40] As we previously have explained, there is no merit to the commissioner's assertion that our holding in *Howard* can be limited to the facts of that case or that *Howard* does not control this case. Indeed, this fact is evidenced by the decisions of the habeas court and the Appellate Court, in which they concluded, in effect, that the commissioner's contrary argument was frivolous.

Accordingly, as the habeas court and Appellate Court determined, the petitioner is entitled to credit for the statutory good time that he had earned in connection with his three year sentence.

C

Finally, the commissioner asserts that, even if we are not persuaded that our decision in *Payton* v. *Albert*, supra, 209 Conn. 23, governs the application of statutory good time credit earned under § 18-7a (c), *Payton* does control the application of presentence good time credit earned pursuant to § 18-98d (b). We disagree.

As we discussed previously, in *Payton*, we were faced with the issue of whether jail time credit[41] earned by an inmate for time served for one offense could be credited toward a second sentence with a later discharge date. Although we factored in Payton's presentence good time in calculating the jail time credit to which Payton was entitled, we did not specifically address the issue of whether presentence good time that he had earned on one sentence could be credited toward a subsequent sentence.[42] Thus, until today, we have not had occasion to determine whether the one continuous term language of § 18-7 is applicable to presentence good time credit earned under § 18-98d (b). Having concluded that the legislature intended that an inmate who, like the petitioner, is entitled to have the statutory good time credit that he earned on one sentence applied to a subsequent, controlling concurrent sentence, we see no logical reason to conclude otherwise with respect to presentence good time credit. Although, as we have indicated, there is a distinction

[41] See footnote 10 of this opinion.

[42] Although our discussion in *Payton*, including our calculation of the amount of time to which Payton was entitled to be credited, encompassed both jail time and presentence good time, neither party in that case made any claim specific to presentence good time.

between jail time credit and statutory good time credit, no such distinction may be drawn between presentence good time credit and statutory good time credit merely because the former is earned prior to sentencing and the latter is earned after sentencing.[43] Consequently, we

[43] Two points that arguably support the commissioner's contention regarding good time bear mention, even though the commissioner has not raised them. First, General Statutes § 18-7 provides in relevant part that multiple sentences "shall be construed as one continuous term for the purpose of estimating the amount of commutation which [an inmate] may earn *under the provisions of this section. . . .*" (Emphasis added.) In light of our determination that the one continuous term language of § 18-7 is not limited to that statutory section; see, e.g., *Howard* v. *Commissioner of Correction*, supra, 230 Conn. 24 (one continuous term language of § 18-7 applies to § 18-7a [c]); *McCarthy* v. *Commissioner of Correction*, supra, 217 Conn. 579, 581 (one continuous term language of § 18-7 applies to § 18-7a [a]); and because § 18-7 "relate[s] generally to the duties and prerogatives of the warden of the prison and the commissioner . . . in relation to the inmates"; *McCarthy* v. *Commissioner of Correction*, supra, 575; we are not persuaded that the legislature necessarily sought to limit the application of the one continuous term requirement of § 18-7 only to statutory good time credits, that is, good time credits earned after the imposition of an inmate's sentence. Furthermore, we have noted that the legislature previously has manifested its intention that the application of good time credits should be "equal and uniform throughout the correctional system . . . ." Id. (explaining legislative purpose underlying § 18-7a [a]). That intention would be thwarted were we to interpret the legislative scheme governing good time credits as creating different rules for the calculation and application of presentence good time credits and statutory good time credits.

Second, the legislature explicitly provided that, for purposes of calculating credit awarded to an inmate for outstandingly meritorious performance under General Statutes § 18-98b, the inmate's multiple terms of imprisonment shall be treated as one continuous term. See General Statutes § 18-98b. The fact that the legislature used such language in that statutory section and not in § 18-98d lends some support to the commissioner's claim that, for purposes of the application of presentence good time, an inmate's multiple sentences are not to be treated as one continuous term. In *McCarthy*, however, we noted that the legislature's use of the one continuous term language in § 18-98b buttressed our conclusion that the identical language of § 18-7 applied to § 18-7a (a), notwithstanding the fact that the latter provision contained no such mandate. See *McCarthy* v. *Commissioner of Correction*, supra, 217 Conn. 576–77. In view of the overriding public policy that good time credit, whenever earned, must be applied fairly and equally, we are not persuaded that the legislature's failure to include the one continu-

conclude that our holding in *Payton* applies only to the allocation of jail time credit earned under § 18-98d (a), and not to the allocation of presentence good time earned under § 18-98d (b).[44]

We agree with the habeas court, therefore, that the petitioner is entitled to a credit toward his total effective term of imprisonment for the 109 days of presentence and statutory good time that he had earned in connection with his three year sentence.

The judgment of the Appellate Court dismissing the appeal is reversed, and the case is remanded to that court with direction to render judgment reversing the order of the habeas court denying the petition for certification to appeal and affirming the judgment of the habeas court in all other respects.

In this opinion CALLAHAN, C. J., and BORDEN, NORCOTT and KATZ, Js., concurred.

MCDONALD, C. J., with whom VERTEFEUILLE, J., joins, dissenting. I disagree with the majority's holding that the petitioner is entitled to credit toward subsequently imposed sentences for the 109 days of good time he earned while serving his prior three year sentence.

In *McCarthy* v. *Commissioner of Correction*, 217 Conn. 568, 587 A.2d 116 (1991), we held that, for purposes of *estimating* enhanced good time credits under General Statutes § 18-7a (a),[1] consecutive sentences must be treated as one continuous term pursuant to

ous term language in § 18-98d is fatal to the petitioner's claim of entitlement to credit for his earned presentence good time credit.

[44] To the extent that our holding in *Payton* may be interpreted as encompassing presentence good time, that portion of *Payton* applicable to presentence good time is overruled.

[1] See footnote 8 of the majority opinion for the text of General Statutes § 18-7a (a).

General Statutes § 18-7.[2] The issue in *McCarthy* concerned whether, in estimating the amount of good time, the prisoner would receive a credit at the rate of ten days or fifteen days per month for each month of his sentence. Under § 18-7a (a) if his sentence was considered to be over five years, the factor was to be fifteen days for each month of the sentence over five years; if less than five years, the ten day factor would be used. We held in *McCarthy* that the prisoner's six consecutive one-year sentences should be treated as "one continuous term" for the purposes of estimating the amount of commutation. That holding was based on our finding that §§ 18-7 and 18-7a (a) should "peacefully coexist." Id., 578.

In *Howard* v. *Commissioner of Correction*, 230 Conn. 17, 644 A.2d 874 (1994), the issue concerned whether forfeited good time that is later restored should be *credited* pursuant to § 18-7a (c) against the petitioner's concurrent sentences imposed after the good time had been earned. We held that, under *McCarthy*, multiple sentences covered by § 18-7a (c)[3] must be treated as one continuous term for purposes of restoring or crediting good time. *Howard* v. *Commissioner of Correction*, supra, 21. Our reasoning was that § 18-7 "makes no distinction between convictions that result in consecutive sentences and those that result in concurrent sentences." Id., 22. The question in *Howard*, however, was not whether § 18-7 makes distinctions between consecutive sentences and concurrent sentences. The question properly was whether, for purposes of § 18-7a (c), § 18-7 applies not only to the *estimating of the amount of*

---

[2] The relevant portion of General Statutes § 18-7 provides: "When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term *for the purpose of estimating the amount of commutation which he may earn* under the provisions of this section. . . ." (Emphasis added.)

[3] See footnote 8 of the majority opinion for the text of General Statutes § 18-7a (c).

*good time*; see *McCarthy* v. *Commissioner of Correction*, supra, 217 Conn. 568; but also to the *crediting of good time* to subsequently imposed sentences. *Howard* did not discuss that issue, but simply held that § 18-7 requires the crediting of previously earned good time to subsequently imposed concurrent sentences.

I would hold that, whether imposed consecutively or concurrently, multiple sentences should not be construed as one continuous term for the purposes of crediting good time pursuant to § 18-7a (c), especially when the result is that a prisoner may earn a reduction in a sentence before a single day of that sentence is served. To rule otherwise is to ignore the statutory language in § 18-7a (c) that any reduction in sentence is to be earned "as such sentence is served. . . ."

This conclusion is supported by the policy behind § 18-7a (c), which was discussed at length in *Seno* v. *Commissioner*, 219 Conn. 269, 593 A.2d 111 (1991). We noted in that case that § 18-7a (c) was enacted in order to end the practice of crediting a prisoner's good time at the outset of a prisoner's sentence on the basis of the full sentence imposed by the sentencing court, a practice known as "posting." Id., 275, 277. We found that § 18-7a (c) "was designed to attain two related objectives. First, the legislature sought to return to the original concept behind good time, that is, the concept of reward for good behavior." Id., 277. "The legislature's second objective was to eradicate an irrational consequence of the posting system. Because, under the posting system, good time is credited at the outset of a sentence, some prisoners receive good time for time that they, in fact, never serve." Id., 278. We then pointed out that "the *predominant* purpose of § 18-7a (c) was to eliminate the possibility of prisoners earning good time for time that is never served." (Emphasis added.) Id. The legislature recognized that the control of prisoners is a continuing problem that must be addressed.

The good time credit system was one "carrot and stick" method that enabled the warden to keep peace among the prison population, which includes many violent prisoners.[4]

I would conclude that the procedure for crediting good time mandated by § 18-7a (c) is different from the estimation formula contemplated by §§ 18-7a (a) and (b). Our holding in *Howard* ignores this basic distinction. Under the majority's ruling in this case, as in *Howard*, a prisoner will be able to credit good time earned on one sentence against a later sentence before he begins serving the later sentence. That result is directly contrary to the intent of the legislature in enacting § 18-7a (c), that good time be earned while serving a sentence. Therefore, I would hold that the legislature did not intend for § 18-7 to apply to § 18-7a (c) for purposes of crediting good time. Accordingly, I would overrule *Howard*.

The majority acknowledges that *Payton* v. *Albert*, 209 Conn. 23, 547 A.2d 1 (1988), may be interpreted as prohibiting the transfer of presentence good time credit between sentences, and overrules it to that extent. See footnote 44 of the majority opinion. Unlike the majority, I would apply the reasoning of *Payton* to both presentence good time and the statutory good time in this case.

Accordingly, I would hold that the petitioner was required to start earning good time as to the subsequently imposed concurrent sentence on the date that he started serving that sentence. I would also hold that the petitioner was required to start earning good time

---

[4] I recognize that we have held that General Statutes § 18-100d rendered good time statutes inapplicable to persons sentenced to a term of imprisonment for any crime committed on or after October 1, 1994. See *Velez* v. *Commissioner of Correction*, 250 Conn. 536, 552, 738 A.2d 604 (1999). Nevertheless, the fact that good time has been abolished does not contradict the policy reasons underlying the good time statutes.

as to the subsequent one year consecutive sentence on the date that he started serving that sentence.

The majority's holding allows prisoners to receive good time credit in advance of serving a sentence and is contrary to the public policy purpose behind § 18-7a (c).

Accordingly, I dissent.